**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**JUVENILE MALE,**
**Defendant–Appellant.**

**No. 87–3091.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 12, 1988.

Decided Dec. 27, 1988.

Priscilla L. Seaborg, Asst. Federal Public Defender, Portland, Or., for defendant-appellant.

William Youngman, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Before SCHROEDER, PREGERSON and LEAVY, Circuit Judges.

SCHROEDER, Circuit Judge:

Appellant is an Indian who, while a juvenile, committed an assault against another Indian within Indian country. Appellant was found to have violated 18 U.S.C. § 113(c)(1982 & Supp. IV 1986), assault with a dangerous weapon with intent to do bodily harm. Federal courts have jurisdiction pursuant to the Major Crimes Act, 18 U.S.C. § 1153 (Supp. IV 1986). Appellant appeals his adjudication as a juvenile delinquent based on the assault.

The principal issues in this appeal relate to the interplay between the jurisdictional provisions of the Major Crimes Act and the jurisdictional provisions of the Juvenile Justice and Delinquency Prevention Act, 18 U.S.C. §§ 5031–42 (1982 & Supp. IV 1986). The Major Crimes Act provides that any Indian who commits one of a certain list of major crimes (including assault) against another Indian on an Indian reservation is subject to federal jurisdiction.[1] Because appellant was a juvenile at the time of the crime, the special provisions of the Juvenile Justice and Delinquency Prevention Act apply. Under that Act, a judicial finding that the juvenile committed the crime does not lead to a criminal conviction, but rather to an adjudication of the juvenile as a "juvenile delinquent."[2] A prosecution under the Act results not in a criminal conviction but in an adjudication of status. *United States v. Frasquillo–Zomosa,* 626 F.2d 99, 101 (9th Cir.), *cert. denied,* 449 U.S. 987, 101 S.Ct. 405, 66 L.Ed.2d 249 (1980).

To establish jurisdiction for such an adjudication, the juvenile delinquency procedures require the government to file a special certification regarding the juvenile before it can proceed against that juvenile:

A juvenile alleged to have committed an act of juvenile delinquency ... shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to the appropriate district court of the United States that

(1) the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency,

(2) the State does not have available programs and services adequate for the needs of juveniles, or

(3) the offense charged is a crime of violence that is a felony ... and that there is a substantial federal interest in the case or the offense to warrant the exercise of federal jurisdiction.

If the Attorney General does not so certify, such juvenile shall be surrendered to the appropriate legal authorities of such State.

---

1. Section 1153(a) provides:
   Any Indian who commits against the person or property of another Indian ... any of the following offenses, namely, ... assault with a dangerous weapon ... within the Indian country, shall be subject to the same law and penalties as all other person committing any of the above offenses, within the exclusive jurisdiction of the United States.

2. "[A] 'juvenile' is a person who has not attained his eighteenth birthday, ... and 'juvenile delinquency' is the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult." 18 U.S.C. § 5031.

   [N]o criminal prosecution shall be instituted for the alleged act of juvenile delinquency except as provided [in this section].... A juvenile who is alleged to have committed an act of juvenile delinquency ... shall be proceeded against under this chapter unless he has requested in writing upon advice of counsel to be proceeded against as an adult....
   18 U.S.C. § 5032.

18 U.S.C. § 5032. In the proceedings below, the Attorney General filed a certification under both the first and third provisions of this section. He certified that no state has jurisdiction and that there is a substantial federal interest in the felony committed.

Appellant's major contentions on appeal go to the adequacy of the government's certification. He argues that further certifications were required in order to take into account his status as a member of an Indian tribe. Appellant raises a number of other claimed errors in the trial court proceedings, including failure to disclose exculpatory evidence per *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), insufficient evidence to find the requisite intent, and abuses of discretion in evidentiary rulings. We find that none of the appellant's contentions have merit and therefore affirm.

The facts are not complex. Both appellant and his victim are residents of the Warm Springs Reservation in Oregon. During the evening of March 23, 1987, the appellant visited the victim, who was eight months pregnant, at her home. She knew the appellant and invited him in. During the visit appellant left the room for a few moments, returning with a kitchen knife, his shirt off, his pants unbuttoned and his genitals exposed. For the next forty-five minutes, appellant attempted, by brandishing the butcher knife, to force the victim to lie down on her couch. After appellant stabbed the victim in the neck she ran out of the house and found help. Appellant was arrested the next morning. He claimed he had taken LSD the night before and did not remember the incident at the victim's home. The federal court assumed jurisdiction pursuant to the Attorney General's certifications under 18 U.S.C. § 5032(1) and (3), held a delinquency hearing, and adjudged the appellant a juvenile delinquent.

*Certification Under the Juvenile Justice Act*

The certification requirements in 18 U.S.C. § 5032 were added to the juvenile delinquency statute in 1974. *See* Pub.L. No. 93–415, 88 Stat. 1109 (1974). Their purpose was to help ensure that state and local authorities would deal with juvenile offenders wherever possible, keeping juveniles away from the less appropriate federal channels. *See* S.Rep. No. 1011, 93rd Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Admin. News 5283. The certifications were designed to remove juveniles from the federal system except for juveniles who would not fall under a state plan, *see* 18 U.S.C. § 5032(1)–(2), or who committed crimes involving a substantial federal interest. *See* 18 U.S.C. § 5032(3).

■ The Attorney General's certification under section 5032(1) comports with the literal requirements of the section. The state of Oregon, where the Warm Springs Reservation is located, has no jurisdictional authority over appellant as he is a member of the Warm Springs Tribe and resides on the reservation. *See United States v. E.K.,* 471 F.Supp. 924, 927–28 (D.Or.1979).

■ Appellant contends, however, that the government should additionally have certified that the tribe, as well as the state, would not exercise jurisdiction or, if the tribe would exercise jurisdiction, had an inadequate program for his needs. Appellant argues that given Congress' express intent to keep juveniles out of the federal court system wherever possible, Congress must have intended such further certifications. He asks that we, as a matter of statutory interpretation, hold that such certifications are statutorily required.

This court, however, cannot read into the intent or actions of Congress what is simply not there. Despite Congress' desire to channel juveniles into state and local treatment programs, clearly expressed in the legislative history of section 5032, the section and its history are completely silent as to tribes.[3] The language and history pro-

---

3. *See* S.Rep. No. 1011, 93rd Cong., 2d. Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Admin. News 5283. The only reference to Indians or Indian affairs in the whole of the legislative history is the listing of "The Department of the Interior: Bureau of Indian Affairs—Program for Detention Facilities—Institutions Operated for Delinquents" among a long list of federal

vide no basis for assuming that Congress intended Indian juveniles otherwise subject to federal jurisdiction under the Major Crimes Act to be subject to tribal jurisdiction. The Major Crimes Act places jurisdiction over serious crimes, including assault, squarely in the hands of the federal government. Federal law limits the punishment a tribe can impose for any crime to $5,000 and one year imprisonment. 25 U.S. C. § 1302(7). By contrast, a conviction under 18 U.S.C. § 113(c) carries with it a maximum penalty of $1,000 and five years imprisonment.

Congress certainly had within its power the ability to include tribes within the certification requirements, but it did not do so. This is explained fully by the Eighth Circuit in *United States v. Allen*, 574 F.2d 435, 438–39 (8th Cir.1978), holding that certification as to tribal jurisdiction is not required by this section. We agree with the Eighth Circuit's analysis. Furthermore, after *United States v. Allen*, Congress reviewed and revised the section 5032 certification requirements. *See* Pub.L. No. 98–473, 98 Stat. 1837 (1984). It made no change to subsections (1) or (2) at that time. It added subsection (3), the "substantial federal interest" certification alternative. This had the effect of *enlarging* federal court jurisdiction to some extent. There is no indication that Congress intended to diminish federal jurisdiction concerning tribes. *See* S.Rep. No. 225, 98th Cong., 2nd Sess. 389, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3529.

In the alternative, appellant contends that if the statute does not require any certification with respect to tribal, as opposed to state authority, then we must hold the statute unconstitutional as a denial of equal protection. The equal protection clause targets distinctions made between individuals on impermissible bases, including race. Appellant contends here that he is the victim of an impermissible race distinction. He claims that because he belongs to the Indian race the certification provisions of section 5032(1) and (2) deprive

him of the benefit of local treatment programs. If a white juvenile living on an Indian reservation were charged with appellant's identical crime against the same victim, the white juvenile would not be sent into the federal system unless no state with jurisdiction and an adequate program could be found, or a substantial federal interest were involved. However, since members of the Indian race living on a reservation are rarely subject to state jurisdiction, the first two certifications in section 5032 always apply to Indian juveniles charged under the Major Crimes Act, assuring that they will always be funneled into the federal system. Appellant contends this is a classification based on race.

■ The difficulty with appellant's position is that the Supreme Court held in *United States v. Antelope*, 430 U.S. 641, 97 S.Ct. 1395, 51 L.Ed.2d 701 (1977), that the distinctions made between Indians and non-Indians as a result of the exclusive federal jurisdiction provisions of 18 U.S.C. § 1153 are not racial in nature, but political. In *Antelope*, the Indian defendants had broken into the home of another Indian on the reservation, robbed her and killed her. Federal jurisdiction over them as Indians under 18 U.S.C. § 1153 subjected them to the federal murder statute, 18 U.S.C. § 1111, which contains a felony-murder rule. Non–Indians were subject to Idaho law which contains no such rule. Therefore, had non-Indians committed the very same act against an Indian on the reservation, the prosecution would have had to prove against them the elements of premeditation and deliberation before a first-degree murder conviction could be obtained.

The Supreme Court held that the application of the felony-murder rule to Indians under section 1153 was not an impermissible racial classification triggering serious equal protection concerns. The reason was that the defendants were subject to federal criminal jurisdiction because they were enrolled members of their tribe, not because of their Indian race. *Id.* at 646, 97 S.Ct. at

programs that dealt with juveniles prior to the passage of the Juvenile Justice and Delinquency

Prevention Act in 1974. *See id.* at 8, *reprinted in* 1974 U.S.Code Cong. & Admin.News at 5291.

1398–99. The court noted that section 1153 jurisdiction "does not apply to 'many individuals who are racially to be classified as "Indians." ' " *Id.* at n. 7 (quoting *Morton v. Mancari,* 417 U.S. 535, 553 n. 24, 94 S.Ct. 2474, 2484 n. 24, 41 L.Ed.2d 290 (1974)). Also, defendants were subjected to exclusive federal jurisdiction only because their crimes were committed on an Indian reservation. *Id.* (citing *Puyallup Tribe v. Department of Game,* 391 U.S. 392, 397, 88 S.Ct. 1725, 1728, 20 L.Ed.2d 689 (1968)). The court went on to say that "[s]ince Congress has undoubted constitutional power to prescribe a criminal code applicable in Indian country, it is of no consequence that the federal scheme differs from a state criminal code otherwise applicable within the boundaries of the State of Idaho." *Id.* 430 U.S. at 648, 97 S.Ct. at 1400 (citation omitted).

We conclude that the reasoning of *Antelope* controls in this case. Here, as in *Antelope,* the assertion of federal jurisdiction under 18 U.S.C. § 1153 is not based on the juvenile's racial status, but on his political membership in an Indian tribe "as 'a separate people' with their own political institutions." *Id.* at 646, 97 S.Ct at 1399. "Federal regulation of Indian tribes … is governance of once-sovereign political communities; it is not to be viewed as legislation of a ' "racial" group consisting of "Indians"….' " *Id.* (quoting *Mancari,* 417 U.S. at 553 n. 24, 94 S.Ct. at 2484 n. 24). Because the difference in treatment between appellant and a non-Indian arises from his political membership in the tribe rather than from his race, no equal protection violation occurs.

■ Appellant also contends that the Attorney General's certification under the third subsection of 18 U.S.C. § 5032 was improper. Under that subsection, the government certified that appellant's crime is a felony involving a substantial federal interest sufficient to warrant the exercise of federal jurisdiction. Appellant contends that an assault by an Indian is not such a crime. Appellant cites the Senate Judiciary Committee Report for the proposition that his assault is outside the exclusive list of crimes that Congress intended should trigger this certification.

The Committee has limited the provision to serious violent felonies and drug offenses so that the Federal Government will continue to defer to state authorities for less serious juvenile offenses. Moreover, the Committee intends that a determination that there is a "substantial Federal Interest" be based on a finding that the nature of the offense or the circumstances of the case give rise to special Federal concerns. Examples of such cases could include an assault on, or assassination of, a Federal official, an aircraft highjacking, a kidnapping where state boundaries are crossed, a major espionage or sabotage offense, participation in large-scale drug trafficking, or significant or willful destruction of property belonging to the United States.

S.Rep. No. 225, 98th Cong., 2nd Sess. 389, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3529. There is no mention of crimes committed by Indians.

Whether appellant's crime falls within the group of crimes targeted by Congress when it enacted this provision is an issue we need not reach, because the certification list in section 5032 is disjunctive. Certification under any one of the three provisions of section 5032 is sufficient to commit a juvenile to the federal court system. We have held above that the certification under the first provision was valid. Appellant's juvenile delinquency adjudication is therefore valid regardless of the validity of the Attorney General's certification under the "substantial federal interest" provision.

*Withholding of Exculpatory Evidence*

Appellant did not learn until after the victim had testified that the victim had been earlier convicted of contributing to the delinquency of a minor by furnishing liquor. Appellant contends that withholding this evidence prejudiced his case because he could have used it to impeach the victim's testimony.

■ Suppression by the prosecution of evidence favorable to the accused violates due process where the evidence is material to the guilt or innocence of the accused.

*Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). Such favorable evidence includes impeachment evidence. *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). However, failure to disclose requires reversal only if the evidence is material, that is, if there is a reasonable probability that the result of the proceedings would have been different had the evidence been disclosed. *United States v. Browne,* 829 F.2d 760, 765 (9th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1298, 99 L.Ed.2d 508 (1988). No violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains of value. *United States v. Gordon,* 844 F.2d 1397, 1403 (9th Cir.1988)(no violation where exculpatory evidence was provided to defendants during trial and the court allowed defendants to recall witnesses and reexamine them about the evidence).

■ In this case the exculpatory evidence came out during the trial although after appellant's cross-examination of the victim. No re-cross examination of the victim for impeachment was necessary here, since the court sat as trier of fact and agreed to admit the evidence and weigh it in its decision. Assuming the impeaching evidence was material, the trial court's consideration of it as trier of fact precluded the possibility of prejudice to appellant's case. Thus, no reversible *Brady* violation has occurred.

### Sufficiency of Evidence on Intent

■ The crime of which appellant is convicted, assault with intent to do bodily harm, requires specific intent. Appellant argues that his voluntary intoxication from taking LSD negates the possibility of his forming the specific intent necessary for conviction. However, appellant was unable to produce any direct evidence other than his own testimony that he had actually taken any drugs. The best appellant could do was produce expert testimony that his actions were not inconsistent with those of someone who had taken LSD. We review to see if any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed. 2d 560 (1979). Under the *Jackson* standard, we conclude that the trial court properly weighed this evidence to find that appellant had the specific intent to injure the victim. Appellant's contention that the evidence was insufficient for this finding has no merit.

### Evidentiary Rulings by the Trial Court

■ Appellant challenges two evidentiary rulings in this non-jury proceeding. He first argues that the court should not have permitted the victim to testify as to appellant's intent, because such testimony violates Federal Rule of Evidence 701. However, the rule permits lay testimony rationally based on the witness' perception. Fed. R.Evid. 701(a). The victim and the appellant were the only witnesses to the incident, and the victim's opinion concerning appellant's intent was rationally based on the fact that appellant was wielding a butcher knife and had his genitals exposed. This court will not disturb a trial court's discretion in admitting lay-opinion testimony absent clear abuse. *United States v. Barrett,* 703 F.2d 1076, 1086 (9th Cir.1983). The court's admission of this evidence was not a clear abuse of its discretion.

■ Appellant also challenges the court's refusal to allow a defense expert, a doctor, to give an opinion whether appellant had the requisite criminal intent. Appellant contends that the expert testimony would merely have answered a factual question concerning appellant's state of mind. However, the question the district court refused to allow answered went to an element of the crime charged. This falls squarely within the prohibition of Federal Rule of Evidence 704(b):

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged.... Such ultimate

issues are matters for the trier of fact alone.

The trial court did not deny appellant the use of his expert's testimony on any issue other than the one forbidden by the rule. We uphold a district court's decision to exclude expert testimony unless manifestly erroneous. *United States v. Byers*, 730 F.2d 568, 571 (9th Cir.), *cert. denied*, 469 U.S. 934, 105 S.Ct. 333, 83 L.Ed.2d 270 (1984). The trial court's ruling comported with the Federal Rules of Evidence, and was neither manifestly erroneous nor an abuse of discretion.

## CONCLUSION

Appellant has failed to show any infirmity either in the pretrial procedures under the juvenile statute or in the conduct of the trial itself. The adjudication of the appellant as a juvenile delinquent by the district court is AFFIRMED.