28 F.3d 109
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jerry William MENEFEE, Defendant-Appellant.
 No. 93-50277.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 10, 1994.*
Decided June 27, 1994.
 
 Before: PREGERSON, O'SCANNLAIN, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Petitioner Jerry William Menefee appeals his conviction and sentence for unarmed bank robbery in violation of 18 U.S.C. Sec. 2113(a). Following a jury trial, the District Court sentenced Menefee to 240 months imprisonment to be followed by 3 years supervised release. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm the conviction and remand for resentencing.
 
 BACKGROUND
 
 3
 On August 21, 1989 a robber entered a Security Pacific National Bank in Sun Valley, California. While waiting in the customer service line, the robber spoke with bank customer Robert Haidle. Once at the teller window, the robber handed teller Terri Wolfe a demand note on a withdrawal slip which read, "This is a robbery, do not hit your silent alarm and give me your cash, I have a gun." When Wolfe reached for the pre-recorded bait bills, the robber told her not to give him any bait bills and placed his right hand on the left side of his waist, simulating a weapon.
 
 
 4
 Wolfe then handed the robber the unmarked cash from her teller drawer, which he placed in a black bag along with the robbery note. As the robber walked away from the teller window, Wolfe cried out, "I just got robbed," and activated the bank's alarm and surveillance cameras. The camera photographed the robber as he exited at the rear of the bank.
 
 
 5
 A federal grand jury returned a single count indictment charging Menefee with unarmed bank robbery on March 13, 1990. Prior to trial, both Wolfe and Haidle gave descriptions of the robber to Los Angeles Police Officers and Special Agents of the FBI. In addition, Wolfe and Haidle identified Menefee as the robber from photospreads.
 
 
 6
 Following these identifications, defense attorneys showed Wolfe and Haidle two other photospreads containing photos of Jerry Menefee and his brothers Paul Menefee and Frederick Menefee. In these photos, Jerry Menefee had changed his appearance, particularly his hair style and facial hair, so that he did not resemble either the surveillance photo or earlier identification photos used by the investigating officers. The changes made in Jerry's appearance made him appear similar to the photographs of his two brothers. Upon viewing the photos, Wolfe was unable to positively identify any one of the brothers as the robber, but she did indicate that the two photos that most resembled the robber were those of Jerry Menefee and Paul Menefee, remarking that Jerry Menefee was "pretty much" who she believed robbed her although she couldn't make a positive identification.
 
 
 7
 At trial, the only disputed fact was the identity of the robber. The defense contended that it was Frederick Menefee--rather than Jerry--who committed the bank robbery. Although Jerry Menefee's appearance at trial conformed to the more recent photographs where he resembled his brothers, Wolfe identified Jerry Menefee as the robber. Haidle, however, could not positively identify him.
 
 
 8
 Jerry Menefee was convicted on June 1, 1990 of a single count of unarmed bank robbery in violation of 18 U.S.C. Sec. 2113(a). The District Court sentenced Menefee to 225[1] months imprisonment to be followed by 3 years supervised release.
 
 
 9
 This court, however, reversed Menefee's conviction on July 28, 1992, based on the District Court's erroneous admission of prejudicial evidence relating to Menefee's drug use and escape from a halfway house.
 
 
 10
 Menefee's retrial began on January 26, 1993. At that trial Menefee again presented the defense that it was his brother Frederick--rather than he--who committed the bank robbery. Frederick Menefee identified himself in three surveillance photos of bank robberies committed around the same time and location as the Sun Valley robbery. Two of the three photos showed the robber as having a thick mustache and goatee. A booking photograph of Frederick Menefee taken around the same time showed him as having a thick mustache and goatee. In contrast, both the third surveillance photo that Frederick identified and the photo taken during the Sun Valley robbery showed the robber as having a relatively thin mustache and no goatee. Frederick testified that these differences resulted from his wearing a disguise which included the thick mustache and goatee.
 
 
 11
 As rebuttal, Whittier Police Officer Salvatore Prisco, who arrested Frederick Menefee and took the booking photograph, testified that in his opinion based on 18 years' experience as an officer the facial hair depicted in the booking photograph was real. In addition, the surveillance photos of the thin-mustached robber showed him wearing glasses, while the photos of the thick-mustached robber depicted no glasses. Moreover, although Frederick testified that Jerry did not wear glasses at the time of the charged robbery, Jerry was wearing glasses when he was arrested and was wearing glasses in the booking photo taken after his arrest.
 
 
 12
 Finally, Frederick Menefee testified that he knew that he had tested positive for the H.I.V. virus before he confessed to committing the charged crime.
 
 
 13
 On the last day of trial, Jerry Menefee called Agent Flanigan, who testified that Frederick Menefee, nicknamed by the FBI as the "black bag bandit," had confessed to approximately twenty-eight bank robberies throughout Los Angeles County, including the Sun Valley Bank. On cross-examination, however, Flanigan testified that he did not believe Frederick Menefee's confession to the Sun Valley robbery. Flanigan's disbelief was based on witness identifications of Jerry Menefee as the robber and the bank's surveillance photograph which, in his opinion, depicted Jerry Menefee. In addition, on cross Flanigan stated that, in his mind, he was certain that it was Jerry who robbed the Sun Valley bank.
 
 
 14
 Jerry Menefee objected to the admission of Flanigan's testimony regarding who was depicted in the Sun Valley surveillance photo as inadmissible lay opinion. The District Court overruled the objection, indicating that the statements were properly admitted as evidence of Agent Flanigan's state of mind at the time that he heard Frederick Menefee's confession to the charged crime.
 
 
 15
 The following day, however, the Government asked the District Court to strike Agent Flanigan's disputed testimony based on the Government's belief that the statements were admitted in error. In addition, the Government requested that the District Court give a cautionary instruction to the jury to disregard the disputed testimony. Jerry Menefee's counsel agreed with the text of the instruction, although she indicated that she thought that the cautionary instruction was insufficient to correct the error, and moved for a mistrial. This motion was denied. The District Court gave the requested instruction to the jury, stating that his ruling regarding the "almost opinion evidence" given by Agent Flanigan was in error.
 
 
 16
 The jury returned a guilty verdict on January 29, 1993. This time the District Court sentenced Menefee to 240 months imprisonment followed by 3 years supervised release. District Judge Williams notified counsel that he intended to increase Menefee's sentence of 225 months following the first trial to the statutory maximum of 240 months. The District Court justified the increase based on its finding that Jerry Menefee had willingly obstructed justice by twice presenting Frederick's "false" testimony which both juries had rejected. Judge Williams reasoned that the brothers had the opportunity to enhance Frederick's story while they shared a prison cell between the first and second trials.
 
 
 17
 At the sentencing hearing, Jerry Menefee argued that an increase in sentence qualified as vindictive sentencing absent a showing that he had exhibited conduct after the first trial which warranted the increase. Both Jerry Menefee and the government agreed that the testimony and theory presented by the defense at the second trial was "essentially identical to [that presented] at the first trial." The District Court rejected Menefee's contention and sentenced Menefee to 240 months.
 
 
 18
 Jerry Menefee raises two issues on appeal. First, he contends that the District Court committed prejudicial error by admitting the opinion testimony of FBI Agent Flanigan regarding which of the Menefee brothers appeared in the surveillance photo and robbed the Sun Valley bank. Menefee further argues that this error could not be corrected by the cautionary instruction. Second, Menefee contends that the District Court engaged in vindictive sentencing when it increased his sentence from the first trial to the second because he exercised his right to appeal.
 
 ANALYSIS
 1. Agent Flanigan's Testimony
 
 19
 Menefee contends that the District Court erred in admitting Agent Flanigan's testimony concerning who he thought committed the Sun Valley bank robbery because the testimony was inadmissible as lay witness opinion.[2] This court will not disturb a trial court's discretion in admitting lay-opinion testimony absent clear abuse." United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir.1989) (citing United States v. Barrett, 703 F.2d 1076, 1086 (9th Cir.1983)).
 
 
 20
 Menefee asserts that the Government elicited inadmissible lay opinion testimony from FBI Agent Flanigan when he testified on cross-examination that, in his opinion, Jerry Menefee, rather than Frederick Menefee, was the bank robber. At trial, this testimony came in response to the Government's open-ended question asking Agent Flanigan why he did not believe Frederick Menefee's confession that he robbed the Sun Valley bank. A review of the trial transcript shows that the Government did not intend this question to elicit a statement from Flanigan concerning Jerry Menefee's innocence or guilt.[3] Although the District Court permitted this testimony as proper evidence of Flanigan's state of mind at the time he heard Frederick Menefee's confession, the Government moved to strike the testimony the following day and offered to provide a mutually agreeable jury instruction to remedy the error.[4] Following this, before closing arguments the District Court informed the jury that it was reversing itself regarding the admissibility of the evidence, and read a lengthy cautionary instruction concerning the jury's use of the evidence.
 
 
 21
 In section A. of its brief, the Government reasserts the argument that the District Court did not abuse its discretion in allowing "cross-examination of [Agent Flanigan] as to his state of mind." In section B., however, the Government again concedes that "Agent Flanigan's testimony stating his opinion as to the guilt of defendant was improper." (Footnote omitted.) We find, in light of the Government's concession on two occasions that this evidence was admitted in error, and our case law,[5] that the District Court erred in admitting the lay opinion testimony by Flanigan concerning the perpetrator of the charged crime.
 
 
 22
 This, however, does not end our inquiry. Having found error, we must next consider whether, as Menefee contends, this error was not harmless. Rulings on the admissibility of evidence where Fourth Amendment claims are not involved are considered non-constitutional. United States v. Echavarria-Olarte, 904 F.2d 1391, 1398 (9th Cir.1990). We measure non-constitutional errors against the more-probable-than-not standard. Id. at 1398. We must reverse the defendant's conviction if it is more probable than not that the prejudice resulting from the error materially affected the verdict. Id.
 
 
 23
 We conclude that the erroneous admission of Flanigan's testimony was harmless error for two reasons. First, the District Court gave a strong curative instruction to the jury which informed the jury to completely disregard the disputed testimony given by Agent Flanigan:
 
 
 24
 During the trial you heard Special Agent Flanigan testify as to his opinion on the truth or falsity of a portion of Frederick Menefee's confession. In the course of rendering this opinion Flanigan testified as to conclusions he had drawn from the investigation of the robbery charged in this case.
 
 
 25
 You're instructed that this testimony is now stricken from the record. You're to disregard this testimony in its entirety and cannot rely on it for any purpose whatsoever.
 
 
 26
 You, the jury, are the sole persons charged with determining whether the government has proved every element of the crime beyond a reasonable doubt. It will be grievous error and a violation of defendant's constitutional right to be tried by a jury for you to base a determination as to the defendant's guilt or innocence in any way on the opinions erroneously rendered by Agent Flanigan. Disregard those opinions completely, for they are irrelevant to the determinations you and you alone must make in this case.
 
 
 27
 (RT Trial at 180-81.)
 
 
 28
 Although the use of a limiting instruction is not always sufficient to cure the effect of potential prejudice of improperly admitted evidence, we presume that a jury will follow an instruction to disregard inadmissible evidence which has been presented inadvertently. United States v. Laykin, 886 F.2d 1534, 1544 (9th Cir.1989), cert. denied 496 U.S. 905 (1990). Here, the instruction--to which both the Government and Defense counsel agreed[6]--clearly and unequivocally stated that the jury could not consider the testimony for any purpose.
 
 
 29
 In addition, the Government reiterated the thrust of the instruction at the beginning of its closing argument:
 
 
 30
 As you've heard, certain testimony has been stricken in this case and I just want to add the emphasis you cannot rely on that testimony in any way whatsoever. You are the jurors in this case and it is your opinions as to guilt or innocence in this case that decide the case. You are the only ones who can decide that and the only things you can decide that on are the facts that are in evidence in this case.
 
 
 31
 (RT Trial at 182-83.)
 
 
 32
 Finally, these cautions were given to the jury shortly after having heard the testimony, which came in during the last day of trial. On the following day the District Court gave the lengthy instruction to the jury, which was followed by the Government's reiteration of Judge William's charge. And, the Government never again referred to the stricken portions of Agent Flanigan's testimony.
 
 
 33
 Based on these facts we find that a proper curative instruction was timely provided by the District Court in its effort to minimize the potential prejudicial impact of the disputed testimony.
 
 
 34
 More to the point, however, we find that the erroneous admission of the evidence was harmless because of the great weight of evidence presented by the Government indicating Jerry Menefee's guilt. Within months of the robbery, eyewitnesses Wolfe and Haidle positively identified Jerry Menefee as the robber from a photospread. Wolfe again positively identified Jerry Menefee in court despite his altered appearance. Further, Agent Flanigan's improper lay opinion testimony was based on evidence already properly before the jury--the surveillance photo taken at the time of the robbery and Frederick's confession. Finally, there were numerous inconsistencies between the testimony presented by the defense and that presented by the Government, including the fact that Jerry Menefee wore glasses at the time of the charged crime although Frederick testified that Jerry did not, Police Officer Prisco's testimony concerning whether Frederick's facial hair was a disguise or not, and the suspicious alteration of Jerry Menefee's appearance following the bank robbery. In addition, Frederick's admission of his infection with the H.I.V. virus established that he had little incentive to tell the truth because his life expectancy is less than the 14-year sentence he is currently serving.
 
 
 35
 In sum, our review of the trial record indicates that it was more probable than not that the improperly admitted testimony did not materially affect the verdict because of the prompt curative instruction given by the District Court and the overwhelming evidence presented which indicated Jerry Menefee's guilt. We therefore affirm Jerry Menefee's conviction for unarmed bank robbery in violation of 18 U.S.C. Sec. 2113(a).
 
 2. Increased Sentenced
 
 36
 Jerry Menefee also appeals the increased sentence imposed on him by the District Court, contending that the District Court engaged in vindictive sentencing when it increased his sentence to 240 months following the second trial. We review the legality of a sentence de novo. United States v. Fine, 975 F.2d 596, 599 (9th Cir.1993) (en banc).
 
 
 37
 Due process of law requires that "vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." North Carolina v. Pearce, 89 S.Ct. 2072, 2080 (1969). To assure that no retaliatory motivation on the part of the sentencing court exists, the Supreme Court has stated:
 
 
 38
 [W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.
 
 
 39
 Id. at 2081 (emphasis added).
 
 
 40
 Before the sentencing hearing, the District Court indicated in a Notice to Counsel that it intended to upgrade Menefee's sentence range to "at least 240 months and possibly higher" because Menefee "caused the willful presentation of false testimony" by offering Frederick Menefee's confession and testimony at trial. (ER at 15.) During the sentencing hearing, however, both the Government and Menefee's counsel advised the District Court that, based on their review of the transcripts, it appeared that "Frederick Menefee's testimony at the second trial was essentially identical to his testimony at the first trial" and that "embellishment" would therefore not be a proper ground for imposing a higher sentence. (ER at 252.) Specifically, the Government stated:
 
 
 41
 With respect to what the court has said about its recollection of the first trial, I differ with that based on reading of the transcripts. I agree with the defense attorney. Mr. Menefee--Frederick Menefee's testimony at the second trial was essentially identical to his testimony at the first trial. I don't believe he embellished his story any more than he had embellished it at the first trial, so I don't think the embellishment would be a proper ground for enhancing the sentence this time.
 
 
 42
 (ER at 252-53.)
 
 
 43
 Our review of the trial transcript convinces us that the Government and Menefee's counsel were correct--there was no substantive change or embellishment in Frederick's testimony from the first trial to the second. Thus, if the District Court based its increase in Jerry Menefee's sentence on an "embellishment" of Frederick Menefee's testimony, it did so in error. There was no new "objective information" presented at trial that would support an increased sentence.
 
 
 44
 The Government contends, however, that the increase was justified because of Menefee's offering of the identical defense theory and testimony at his second trial. The Government asserts that Menefee was "clearly aware of facts, namely the evidence presented at the first trial, indicating that Frederick Menefee's testimony was false." Yet, "[d]espite this awareness, at the second trial Frederick Menefee was again called as a witness and repeated his false testimony from the first trial."
 
 
 45
 At the sentencing hearing Judge Williams accepted this reasoning as a proper foundation to support the increase.
 
 
 46
 I agree with [the Government] that an increase is well justified because, as [the Government] indicate[s], having heard the testimony of the first trial and its utter failure to convince the jury, that [Jerry Menefee] tried it again--and in my judgment tried even better this time--and that constitutes conduct of the defendant after the first trial that well justifies a harsher sentence.
 
 
 47
 (ER at 253.) Further, the District Court stated in its Order of Justification for Sentence:
 
 
 48
 Such higher sentence is based upon activity on the part of Jerry Menefee in once again offering Frederick's perjured testimony even after knowing that the first jury had rejected such testimony and after knowing that the surveillance pictures clearly showed the person in the bank to be Jerry and not Frederick Menefee.
 
 
 49
 (ER at 65-66.)
 
 
 50
 We agree that the defense theory presented at both trials was difficult to believe. And we readily find support for rejection of the defense theory in the two jury's findings of Jerry Menefee's guilt. However, we cannot agree that presentation of the identical defense can provide a basis for increasing a sentence. Were we to so hold, defendants would be all but barred from presenting the same defense at their retrial because an unsuccessful outcome could automatically justify an increased sentence.
 
 
 51
 Pearce relies on the policy that "fear of ... vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction...." Id. at 2080. We certainly do not condone a defendant's knowing presentation of perjured testimony. We would, however, be defying the standard set forth in Pearce if we decided that the representation of the defense's identical theory at retrial, absent objective information concerning identifiable conduct occurring after the original sentencing hearing which demonstrated falsification of evidence for presentation at the second trial, could form the basis for an increased sentence.
 
 
 52
 AFFIRMED and REMANDED for resentencing.
 
 
 53
 FERNANDEZ, Circuit Judge, concurring and dissenting:
 
 
 54
 I agree with all but part 2 of the disposition, but I dissent as to that part. As I see it, the district court increased Menefee's sentence at his second trial because he had presented a cooked up story and perjured testimony a second time. I, along with the district judge, believe that two separate attempts to so obstruct justice are worse than one attempt. The second perjury was objective, identifiable conduct which occurred after the time of the first sentence. See North Carolina v. Pearce, 395 U.S. 711, 725-26, 89 S.Ct. 2072, 2080-81, 23 L.Ed.2d 656 (1969). Moreover, I see no particular significance in the fact that he presented the same theory of defense both times. Even if the defense theory remained the same, that did not justify a new dose of perjury. If his theory depended on perjury, he should have felt contrition and thanked his lucky stars that he had an opportunity for a new, honest trial. He should not have felt that he had been given a dispensation to sin again. If this case did require us to balance the remote possibility of deterring appeals against the obvious need to deter perjury, I would opt for the latter. I, however, do not think it does.
 
 
 55
 Thus, I respectfully dissent to part 2 and concur in the remainder of the disposition.
 
 
 
 *
 The panel unanimously found this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Menefee's brief states that he was sentenced to 215 months during this first trial. Whether the correct sentence is 215 months or 225 is of no consequence in deciding the issue before us, which is whether the District Court erred in imposing a greater sentence after the second guilty verdict than it imposed following the first guilty verdict
 
 
 [2]
 Federal Rule of Evidence 701 states that lay opinion testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."
 
 
 [3]
 See Government's brief, n. 3
 
 
 [4]
 The Government stated during conference following the testimony:
 Your Honor, I agree with the court that when offered the testimony was appropriate as to the Agent's state of mind....
 However, in giving that opinion [defense counsel] brought to my attention that in some point in giving his opinion Agent Flanigan apparently stated that he had also formed the opinion that Jerry Menefee was the person who had committed [the] crime. I believe that that statement was probably error. And it's that statement I believe the court should strike to be safe. And in the hope of avoiding possible problems on appeal, I'm asking the court to strike all of his opinion relating to that.
 
 
 [5]
 See e.g., United States v. LaPierre, 998 F.2d 1460, 1465 (9th Cir.1993) (District Court abused its discretion in permitting investigating police officer to give lay opinion on identification of robber in bank surveillance photo because lay opinion testimony of this type is of "dubious value" and runs the "risk of invading the province of the jury and unfairly prejudicing" the defendant)
 
 
 [6]
 While not waiving her right to move the District Court for a mistrial based on the erroneously admitted testimony, she did state during the conference, "I would agree with the text of this cautionary instruction." (RT at 176-79.)