46 F.3d 1147
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Craig FRIZZELL, Defendant-Appellant.
 No. 93-30467.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 9, 1994.
Decided Dec. 30, 1994.
 
 1
 Before: NOONAN, O'SCANNLAIN, and LEAVY, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 FACTS
 
 3
 On January 25, 1993, a lone male wearing a dark ski mask and waving a blue revolver robbed the Key West Bank of Alaska in Wasilla. After forcing three tellers to turn over a total of $10,892.00, he ran out the door and through the snow to a waiting vehicle.
 
 
 4
 Three days later a woman telephoned the Anchorage police and informed them that, in her opinion, the robbery was carried out by her former boyfriend, David A. Duplechain, and his friend and roommate, Appellant Michael Frizzell. An FBI investigation produced several acquaintances of Duplechain and Frizzell who later testified that the two suspects had often discussed robbing a bank; that three days before the robbery, Duplechain had purchased the handgun used in the robbery; and that the day of the robbery Duplechain and Frizzell, both unemployed, had gone on a shopping spree in the local shopping center, purchasing new leather jackets, a gold rope chain and diamond earring, and snakeskin cowboy boots.
 
 PROCEEDINGS
 
 5
 On February 5, 1993, FBI Agent Kenneth Marischen swore out a criminal complaint and affidavit in support of probable cause for an arrest warrant and a warrant to search the apartment shared by Duplechain and Frizzell.
 
 
 6
 According to the affidavit, "Eyewitnesses present stated that they believe the robber to be Caucasian, based upon his speech, enunciation, and general demeanor." In fact, out of seven eyewitness statements obtained from bank employees by the FBI, two witnesses described the robber as White, two as Black, and one as either Black or Hispanic. Two witnesses made no statement as to the race or ethnicity of the robber.
 
 
 7
 Based on the affidavit the U.S. Magistrate found probable cause and issued the search and arrest warrants. During the search FBI agents found several items which implicated Duplechain and Frizzell in the robbery.
 
 
 8
 Both men were arrested on February 2, 1993. After a preliminary detention hearing on February 5, 1993, the U.S. Magistrate found no probable cause to detain Duplechain and Frizzell, dismissed the complaint against them, and ordered them released.
 
 
 9
 On February 15, 1993, the FBI arranged for its informant, Michelle Pitner, to surreptitiously record a conversation between Pitner and Duplechain in which Duplechain admitted to carrying out the robbery with Frizzell.
 
 
 10
 On February 18, 1993, both men were rearrested and counsel was reappointed to represent them.
 
 
 11
 On February 25, 1994, a Grand Jury returned an indictment against Duplechain and Frizzell for armed robbery and use of a firearm during a crime of violence.
 
 
 12
 On March 9, 1993, Duplechain pleaded guilty to bank robbery, stating that he had been the wheelman while Frizzell actually went into and robbed the bank. As part of his plea bargain he agreed to cooperate with the government in its case against Frizzell.
 
 
 13
 Before trial Frizzell's counsel requested that the government produce any exculpatory evidence and the district court ordered it to do so. Although the government produced some documents in response it failed to produce seven "robbery description sheets" filled out by bank employees immediately after the robbery and provided to the FBI. Frizzell did not learn of these witness statements until after he was tried.
 
 
 14
 After nine days of trial and four days of jury deliberation the district judge determined that the jury was hung and declared a mistrial. Frizzell then moved for dismissal on the ground that the FBI's failure to disclose the exculpatory information contained in the witness statements was so outrageous as to warrant dismissal of the charges against him. The district court denied Frizzell's motion to dismiss and scheduled a new trial.
 
 
 15
 The second trial lasted four days and the jury convicted Frizzell after only two hours of deliberation.
 
 ANALYSIS
 
 16
 I. Frizzell Failed To Demonstrate That The Affidavit, Purged Of Its Falsities, Would Not Be Sufficient To Support A Finding of Probable Cause
 
 
 17
 Frizzell argues that the district court erred in failing to hold an evidentiary hearing to test the probable cause determination pursuant to Franks v. Delaware, 438 U.S. 154 (1978). This court reviews denial of a Franks hearing de novo. U.S. v. Lingenfelter, 997 F.2d 632, 639 (9th Cir.1993).
 
 
 18
 To be entitled to a Franks hearing, Frizzell had to make a "substantial preliminary showing" that "(1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit purged of its falsities would not be sufficient to support a finding of probable cause." U.S. v. Stanert, 762 F.2d 775, 780 (9th Cir.1985), amended, reh'g denied, 769 F.2d 1410 (9th Cir.1985).
 
 
 19
 The statement in the affidavit that "eyewitnesses present stated that they believe the robber to be Caucasian" was misleading, in that two witnesses stated he was Black, and one that he was Black or Hispanic. However, the affidavit also contained extensive information linking Frizzell to the robbery, including a detailed statement from Duplechain's girlfriend and a statement from a pawn shop owner who sold Duplechain the revolver three days before the robbery.
 
 
 20
 Hence Frizzell could not make the required substantial preliminary showing that the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause.
 
 
 21
 II. The Magistrate Did Not Err In Finding A Substantial Nexus Between The Items Sought In The Warrant And Frizzell's Residence
 
 
 22
 Frizzell argues that the FBI's affidavit did not provide the magistrate with a substantial basis for finding a nexus between items sought in the warrant and Frizzell's residence.
 
 
 23
 This court will not reverse the magistrate's conclusion that probable cause existed for issuing a warrant to search Frizzell's apartment unless that conclusion is clearly erroneous. United States v. Stanert, 762 F.2d 775, 779 (9th Cir.1985). There need be "only a reasonable nexus between the activities supporting probable cause and the locations to be searched." United States v. Ocampo, 937 F.2d 485, 490 (9th Cir.1991).
 
 
 24
 The FBI's affidavit, especially the information provided by Duplechain's ex-girlfriend, provided a substantial basis for concluding that Duplechain and Frizzell were involved in the robbery. As the Magistrate wrote in his recommendation to deny Frizzell's suppression motion, "It is not necessary to have the experience of an FBI agent to reasonably infer that monies, weapons and clothing involved in a bank robbery might be found within days of the robbery at the residence of persons involved."
 
 
 25
 The Magistrate's decision to issue the warrant was not clearly erroneous.
 
 
 26
 III. The Surreptitious Interrogation Of Codefendant Duplechain After The Initial Complaint Was Dismissed And Before The Grand Jury Indictment Did Not Violate Frizzell's Sixth Amendment Rights
 
 
 27
 On February 15, 1993, the FBI arranged for its informant to surreptitiously record a conversation between the informant and Duplechain, in which Duplechain admitted carrying out the robbery with Frizzell. That was ten days after the Magistrate Judge had dismissed the first complaint against Frizzell for lack of probable cause, three days before Frizzell was arrested a second time, and ten days before the Grand Jury indicted Frizzell for the robbery. Nevertheless, Frizzell argues that the surreptitious recording of the conversation with Duplechain outside of the presence of counsel violated Frizzell's Sixth Amendment rights.
 
 
 28
 Frizzell's right to counsel did not attach until formal adversarial proceedings had been commenced against him, "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Brewer v. Williams, 430 U.S. 387, 398 (1977). The district court denied Frizzell's motion to suppress the evidence obtained from the interview with Duplechain on the ground that the first complaint had been dismissed and no formal charges had yet been reinstated. It declined to address the question of whether Frizzell had standing to raise Duplechain's Sixth Amendment rights in a motion to suppress evidence offered against Frizzell.
 
 
 29
 Neither Duplechain nor Frizzell were represented by counsel on February 15, 1993, when the interview took place. The complaint against them had been dismissed, and no formal charges were pending. Hence the district court did not err in holding that the surreptitious interview did not violate Frizzell's right to counsel under the Sixth Amendment.
 
 
 30
 IV. The Government's Failure To Produce The Exculpatory Witness Statements Was Not So Egregious As To Require Dismissal
 
 
 31
 During the first trial Frizzell's attorney learned that one of the tellers at the bank, Deann Halverson, had filled out a "robbery description sheet" after the robbery. The government then produced Halverson's statement, but failed to inform the defense of the other six witness statements and explicitly stated that "the FBI is in possession of no other robbery description sheets." Upon learning the truth, Frizzell moved to have the charges against him dropped on the ground that the government's failure to produce this potentially exculpatory evidence violated his right to due process.
 
 
 32
 Although District Judge John W. Sedwick found that the undisclosed forms "provide exculpatory material," he held that the government's failure to disclose the forms did not violate Frizzell's right to a fair trial because the first trial had been declared a mistrial and Frizzell had the forms before the second trial began.
 
 
 33
 The government's suppression of evidence favorable to Frizzell would violate due process if the evidence was material to his guilt or innocence. U.S. v. Juvenile Male, 864 F.2d 641, 646 (9th Cir, 1988), citing Brady v. Maryland, 373 U.S. 83, 87 (1963). "No violation occurs," however, "if the evidence is disclosed to the defendant at a time when the disclosure remains of value." Id. at 647.
 
 
 34
 Frizzell had possession of the statements before commencement of the second trial. Hence the evidence was disclosed at a time when the disclosure remained of value. That Frizzell did not exploit the statements during the second trial suggests that the information was not material to his guilt or innocence. Frizzell was not denied due process.
 
 
 35
 Frizzell also argues that failure to produce the exculpatory evidence during the first trial resulted in his being subject to double jeopardy when he was forced to stand trial a second time.
 
 
 36
 Frizzell quotes Justice Stevens' opinion in Arizona v. Washington, 434 U.S. 497, 503-504 (1978): "a second prosecution ... increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted."
 
 
 37
 Frizzell neglects to mention, however, that soon after describing the importance of the right against double jeopardy, the Arizona court went on to note that a "trial judge's belief that the jury is unable to reach a verdict [has] long [been] considered the classic basis for a proper mistrial." Id. at 509.
 
 
 38
 Hence Frizzell was not subjected to double jeopardy when the trial court declared a mistrial after concluding that the first jury was hung. The fact that Frizzell had the witness statements in time for the second trial rendered harmless the government's clearly wrongful failure to produce them before the first trial.
 
 CONCLUSION
 
 39
 For the reasons stated above, we AFFIRM Frizzell's conviction.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3