[No. 10271-1-I.   Division One.   September 15, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. JUSTIN TIDWELL, *Appellant.*

*G. William Shaw of Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Rebecca J. Roe, Deputy,* for respondent.

JAMES, J.—Justin Tidwell appeals his juvenile court convictions for violation of civil rights under 18 U.S.C. § 241 and for criminal trespass in the second degree under RCW 9A.52.080, alleging the juvenile court lacked jurisdiction to try him for the federal crime and that he was denied his right to a speedy trial under JuCR 7.8. We dismiss the charge for violation of 18 U.S.C. § 241 for lack of jurisdiction and remand to the trial court for further factfinding essential to a determination of the speedy trial issue.

December 31, 1980, a cross was burned in the yard of a black family. Tidwell and two other juveniles were arraigned on charges of second degree arson and second degree criminal trespass on January 12, 1981. A "factfinding" hearing was set for February 24, 1981 for all three codefendants. On February 24, 1981, an order of continuance was granted to March 9, 1981, based upon the State's motion for permission to file an amended information charging the juveniles under federal law. The continuance was granted to allow the defendants additional time to prepare after receipt of the amendment.

The amended information filed March 4, 1981 charged the juveniles with violating the victim's civil rights under 18 U.S.C. § 241. At the March 9, 1981 hearing, the State was

granted a continuance to March 23, 1981 in order to prepare a response to defendants' motions to dismiss for lack of jurisdiction.

March 23 and 24, 1981, the trial judge[1] denied defense motions to dismiss for lack of jurisdiction and for violation of the speedy trial time limits of JuCR 7.8. On March 27, 1981, the matter was set for an adjudicatory hearing to be held March 30, 1981. The hearing was held on March 31. Defense motions to dismiss were again raised and denied, and the juveniles were convicted on both counts.

Tidwell appeals, presenting two dispositive issues. First, he contends the trial judge erred in ruling that the juvenile court had jurisdiction to try a juvenile for violation of 18 U.S.C. § 241. We agree.

18 U.S.C. § 3231 provides:

> The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

Congress may expressly, or by implication, confer upon state courts jurisdiction of certain matters concurrent with that of federal courts. 1A J. Moore, *Federal Practice* ¶ 0.201, at 2020–21 (1982). As a general rule, state courts can exercise concurrent jurisdiction with federal courts in cases arising under the constitution, laws and treaties of the United States, where it is not excluded by express provision, or by incompatibility in its exercise arising from the nature of the particular case. *Claflin v. Houseman,* 93 U.S. 130, 136, 23 L. Ed. 833 (1876).[2] By the express provision of 18 U.S.C. § 3231, jurisdiction over all offenses against the laws of the United States rests exclusively in the United

---

[1]The pretrial and factfinding rulings we review here were not made by Judge Holman, who presided only at sentencing.

[2]Civil actions for damages arising from violations of civil rights may be brought in state or federal courts. 28 U.S.C. § 1343, the jurisdictional grant keyed to 42 U.S.C. § 1983, contains no language granting exclusive jurisdiction to federal courts. *New Times, Inc. v. Arizona Bd. of Regents,* 20 Ariz. App. 422, 513 P.2d 960, 964–65 (1973), *vacated on other grounds,* 110 Ariz. 367, 519 P.2d 169, 176 (1974).

States district courts.

The state Legislature of Washington has, by statute, conferred exclusive jurisdiction of juvenile offenses upon the state juvenile courts. RCW 13.04.030 states:

> The juvenile courts in the several counties of this state, shall have exclusive original jurisdiction over all proceedings:
>
> . . .
>
> (6) Relating to juveniles alleged or found to have committed offenses, traffic infractions, or violations as provided in RCW 13.40.020 through 13.40.230, . . .

RCW 13.40.020(15) provides:

> "Offense" means an act designated a violation or a crime if committed by an adult under the law of this state, under any ordinance of any city or county of this state, under any federal law, or under the law of another state if the act occurred in that state;

The State contends the above quoted statutes confer concurrent jurisdiction upon federal and state courts over offenses which violate both federal and state law, citing *Hebert v. Louisiana,* 272 U.S. 312, 71 L. Ed. 270, 47 S. Ct. 103, 48 A.L.R. 1102 (1926). The State additionally contends that 18 U.S.C. § 5032 indicates a congressional preference for state court jurisdiction over offenses committed by juveniles.

18 U.S.C. § 5032 provides in pertinent part:

> A juvenile alleged to have committed an act of juvenile delinquency shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to an appropriate district court of the United States that the juvenile court or other appropriate court of a State (1) does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, or (2) does not have available programs and services adequate for the needs of juveniles.
>
> If the Attorney General does not so certify, such juvenile shall be surrendered to the appropriate legal authorities of such State.
>
> If an alleged juvenile delinquent is not surrendered to the authorities of a State or the District of Columbia

pursuant to this section, any proceedings against him shall be in an appropriate district court of the United States.

Tidwell falls within the statutory definition addressed by 18 U.S.C. § 5032. 18 U.S.C. § 5031 states:

For the purposes of this chapter, a "juvenile" is a person who has not attained his eighteenth birthday, or for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty–first birthday, and "juvenile delinquency" is the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult.

We agree that the transfer procedure described in 18 U.S.C. §§ 5001 *et seq.* is an expression of congressional preference for state court jurisdiction over offenses committed by juveniles. In establishing the statutory scheme, Congress intended to provide a procedure whereby federal courts could surrender juveniles apprehended by federal officials to juvenile authorities in the local communities which have primary responsibility for their welfare. *District of Columbia v. P.L.M.,* 325 A.2d 600 (D.C. 1974). We also agree that Washington state juvenile courts have concurrent jurisdiction with that of federal district courts over a federal offense committed by a juvenile when the offense is also a violation of Washington state law. 1 C. Torcia, *Wharton on Criminal Procedure* § 14, at 48 (12th ed. 1974). *See Bartkus v. Illinois,* 359 U.S. 121, 3 L. Ed. 2d 684, 79 S. Ct. 676 (1959); *Abbate v. United States,* 359 U.S. 187, 3 L. Ed. 2d 729, 79 S. Ct. 666 (1959); *State v. Jeske,* 13 Wn. App. 118, 122, 533 P.2d 859 (1975).

We do not agree that the surrender statutes in 18 U.S.C. §§ 5001 *et seq.* impliedly grant the state court power to try juvenile offenders for violations of federal criminal laws. That jurisdiction is, by statute, vested exclusively in the federal district court. 18 U.S.C. § 3231.

A useful analogy was stated by the United States Supreme Court when it held that prosecution and punish-

ment by the federal government did not constitute double jeopardy after the same defendant had been prosecuted in a state court for the same offense. *United States v. Lanza,* 260 U.S. 377, 67 L. Ed. 314, 43 S. Ct. 141 (1922). The Court stated at page 382:

> We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject–matter within the same territory. Each may, without interference by the other, enact laws to secure prohibition, with the limitation that no legislation can give validity to acts prohibited by the [Eighteenth Amendment]. Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other.
>
> . . . Here the same act was an offense against the State of Washington, because a violation of its law, and also an offense against the United States under the National Prohibition Act.

An act denounced by both federal and state sovereignties is an offense against the peace and dignity of both, and may be punished by each. *United States v. Jackson,* 470 F.2d 684, 689 (5th Cir. 1972).

Had federal authorities obtained custody of Tidwell for an alleged violation of 18 U.S.C. § 241, the transfer provisions of 18 U.S.C. would have become applicable. *See generally United States v. Sechrist,* 640 F.2d 81 (7th Cir. 1981); *United States v. Ramapuram,* 432 F. Supp. 140 (D. Md. 1977), *aff'd,* 577 F.2d 738 (4th Cir. 1978). The United States Attorney in the Western District of Washington would have investigated and determined whether Tidwell should be charged under 18 U.S.C. § 241. Washington at that time had no law functionally equivalent to 18 U.S.C. § 241. The United States Attorney would have made a decision either to surrender Tidwell for prosecution under the state law prohibiting criminal trespass, RCW 9A.52.080, or would have determined that the circumstances created a compelling federal interest justifying proceeding against Tidwell in federal court for violation of the family's civil rights. *United States v. Vancier,* 515 F.2d 1378 (2d Cir.

1975); *United States v. Andy,* 549 F.2d 1281 (9th Cir. 1977). *See also District of Columbia v. P.L.M., supra* at 603–04.[3] Tidwell could in the latter case have been tried in federal district court for violation of 18 U.S.C. § 241, and, if convicted, then could have been surrendered to the state juvenile justice system for sentencing or supervision. *See In re D.B.S.,* 137 N.J. Super. 371, 349 A.2d 105 (1975). Tidwell could also have been tried in juvenile court for violation of RCW 9A.52.080, the criminal trespass charge arising from the same incident. *United States v. Lanza, supra.*

The State of Washington has no power to confer original jurisdiction over alleged federal crimes upon a state juvenile court. The definition of "offense" found in RCW 13.40.020(14)[4] provides a mechanism by which state juvenile courts may receive a juvenile transferred under 18 U.S.C. § 5032. The state Legislature may not, by defining an "offense" to include any violation of any law, supersede the original and exclusive jurisdiction granted to federal district courts in 18 U.S.C. § 3231.

Count 1 is dismissed for lack of jurisdiction.

Tidwell also contends the trial judge erred in refusing to dismiss these cases for violation of JuCR 7.8, the juvenile court speedy trial rule. JuCR 7.8 provides in pertinent part:

> **(b) Time Limits.** The adjudicatory hearing on a juvenile offense shall begin within 60 days following the juvenile's arraignment in juvenile court on the charges contained in the information. . . .
>
> **(c) Excluded Periods.** The following periods shall be excluded in computing the time for the adjudicatory hearing:
>
> . . .
>
> (3) Delay granted by the court pursuant to section (d).

---

[3]The opposite result was reached when a similar question arose in the District of Columbia. However, the District of Columbia is a federal jurisdiction with the local superior court (family division) being created by Congress under article 1 of the constitution. *Palmore v. United States,* 411 U.S. 389, 36 L. Ed. 2d 342, 93 S. Ct. 1670 (1973); *District of Columbia v. P.L.M.,* 325 A.2d 600, 603 n.6 (D.C. 1974).

[4]RCW 13.40.020(14) is now codified in RCW 13.40.020(15).

**(d) Continuances.** Continuances or other delays may be granted as follows:

. . .

(2) On motion of the prosecuting attorney if:

. . .

(iii) required in the due administration of justice and the alleged juvenile offender will not be substantially prejudiced in the presentation of his or her defense.

(3) The court on its own motion may continue the case when required in the due administration of justice and the alleged juvenile offender will not be substantially prejudiced in the presentation of his or her defense.

Tidwell contends the trial judge erred in granting the State's motion for a continuance on March 9, 1981. He contends that period should not be excluded from the computation of the 60–day time for trial period under JuCR 7.8. We do not agree.

Where delay of trial is caused by some administrative oversight or by trial docket congestion, "[s]elf–created hardship is not an excuse for violating mandatory rules." *State v. Mack,* 89 Wn.2d 788, 794, 576 P.2d 44 (1978) (construing CrR 3.3). Tidwell contends the State was tardy in filing the amended information, but he was prepared to meet the charges in spite of the late amendment. He contends the State should suffer the consequences of the speedy trial violation which resulted from the continuance.

Under court rules for adult defendants and under Washington case law, the time required for consideration of defense motions does not justify extension of the 60–day time–for–trial rule. CrR 3.3. Specific enumeration of periods to be excluded from the computation of speedy trial time limits evinces "an intent not to include other pretrial proceedings in the excluded periods of CrR 3.3(d)." *State v. Durham,* 13 Wn. App. 675, 679, 537 P.2d 816 (1975) (defense motion to suppress); *State v. DeLong,* 16 Wn. App. 452, 557 P.2d 14 (1976) (motion for change of venue); *State v. Lindbo,* 94 Wn.2d 112, 614 P.2d 1277 (1980) (motion for change of venue). Similarly, a motion to dismiss

for lack of jurisdiction does not ordinarily justify extension of the 60–day rule. Tidwell contends the same rules should apply by analogy to JuCR 7.8. When the continuance period is included, 77 days had passed between Tidwell's arraignment January 12, 1981 and the trial date set March 30, 1981.

■ The trial court has a duty to make an adequate record of the reasons for noncompliance with speedy trial time periods. *State v. Williams,* 87 Wn.2d 916, 557 P.2d 1311 (1976). The record of the trial judge's reasons for granting the State's motion for continuance on March 9, 1981 shows he did not address the reasons for continuing count 2, the criminal trespass charge under RCW 9A.52-.080. In response to the prosecutor's concern about violation of JuCR 7.8, the trial judge stated:

> Ms. ROE: Your Honor, I would shorten the time. I am considering still about the speedy trial issue, and I would be more than happy to get a brief to counsel by Wednesday if they want to reply, and we can argue the legal Motions at some point earlier.
>
> THE COURT: That is too quick for the Court. These questions are exhaustive. I bet you there are 20 books in the library that I have got to read; it is impossible to do this, so I think there is this rule—I haven't got it in front of me—issues of judicial administration, I can set the time within reason and that is what I am trying to do, but I don't want it to be any longer than it has to be to suit your needs.

When ruling on the motion to dismiss for noncompliance with JuCR 7.8, the judge stated:

> Therefore, this Motion is denied under Juvenile Court Rule 7.8:
> "The Court on its own motion may continue the case when required in the due administration of justice and the alleged juvenile offender will not be substantially prejudiced in the presentation of his or her defense."
> It is a matter of fact the juvenile offender will be helped to present this defense so the Motions are denied.
>
> MR. LUND: May I seek a clarification, your Honor. I can appreciate the Court's reasoning as to Count I of the Information charging the FEDERAL CONSPIRACY. It seems

to me, however, that in no way touches upon the charge of CRIMINAL TRESPASS which was not a matter that required any kind of rearraignment, and all parties were here for trial on March 9th.

THE COURT: What do you want clarified?

MR. LUND: That the dismissal [*sic*] [denial of motion to dismiss] only go to the refusal to accept the defendant's Motion [to dismiss for lack of jurisdiction].

THE COURT: What did I say?

MR. LUND: I believe you said you—

THE COURT: The Motion for Dismissal on the Count was denied; that solved it.

MR. LUND: As to both Counts?

THE COURT: Don't have to say so. Now, what's next?

The trial judge specifically found that the juvenile defendants would be helped, rather than prejudiced, in the presentation of their defense. Defense counsel had not requested a severance of the two counts, although in the motion to dismiss Tidwell's counsel points out that all delays were made necessary by the State's amendment to charge a violation of federal law. Had the court possessed jurisdiction of both counts, they would have been properly tried together, since they arose from the same incident. The period from March 9 through March 23 would have been properly excluded under JuCR 7.8.

However, the motions to dismiss for violation of JuCR 7.8 were renewed at the trial on March 31, 1981. The record does not reflect the reasons the trial judge denied those motions, nor does he state for the record that any period from March 24 to 31 was excluded from the time computation under JuCR 7.8.

The record reflects:

MR. LUND: I would only add, your Honor, my [previous] motion specifically talks about period of time between March 9th and March 24th. The trial brief talks about those particular dates, and I think those are the only dates Judge Revelle was looking at, because that is the only period he was excluding for an opportunity for the State to respond to our motions to dismiss. He was not looking to this particular trial date to include within his ruling that we were beyond the 60 days.

THE COURT: Is the thrust of your argument that Judge Revelle, when he set it for the 31st, today, that he simply wasn't thinking about the rule?

MR. LUND: It may be. No one raised to him that it was going to be beyond the 60 day rule. No one suggested that he should include, in his computation of time when he talked about furtherance of justice, that it should include this period from the 24th until today. That wasn't brought up at all.

THE COURT: I believe I'll deny the motion.

We remand count 2 for a determination on the record of whether the period from March 24 to March 31 was properly excluded from the computation of time for trial pursuant to JuCR 7.8(d)(3). *State v. Williams, supra* at 920.

DURHAM, A.C.J., and RINGOLD, J., concur.