66 Cal.Rptr.3d 612 (2007)
155 Cal.App.4th 1115
In re JOSE C, a Person Coming Under the Juvenile Court Law.
The People, Plaintiff and Respondent,
v.
Jose C, Defendant and Appellant.
No. D049525.
Court of Appeal of California, Fourth District, Division One.
October 1, 2007.
*613 Law Office of Kurt David Hermansen and Kurt David Hermansen, under appointment by the Court of Appeal, San Diego, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette and Gary W. Schons, Assistant Attorneys General, Lise Jacobson and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.
HALLER, Acting P.J.
A juvenile court found true an allegation that 16-year-old Jose C. committed the federal crime of bringing aliens into the United States (8 U.S.C. § 1324(a)(2)(B)(iii)), and therefore that he fell within the court's jurisdiction under Welfare and Institutions Code section 602. Based on these findings, the court declared Jose to be a ward of the court, and sentenced him to time served in custody (58 days) and placed him on probation until his 18th birthday (April 8, 2008).
On appeal, Jose contends the state court had no jurisdiction over him because the sole basis of the juvenile petition was a federal crime. We reject this contention and affirm.

FACTUAL AND PROCEDURAL SUMMARY
On August 16, 2006, United States Border Patrol agents tracked footprints leading across the Mexican border into the California desert near Calexico. A Border Patrol agent in a helicopter saw several persons hiding in bushes. One of those persons, later identified as Jose, wore a long sleeve dark gray shirt. Jose motioned to the other individuals, and then hid an item under a bush. After detaining Jose and six other persons, an agent recovered a cell phone hidden under the bush. Jose was the only person wearing long sleeves. The federal agents arrested Jose, who was later transferred to state custody.
Two days later, on August 18, the Imperial County District Attorney filed a juvenile wardship petition under Welfare and Institutions Code section 602, alleging a single count of illegally bringing six aliens into the United States without presentation at the border, in violation of 8 U.S.C. section 1324(a)(2)(B)(iii). At the outset of the jurisdictional hearing, Jose's counsel objected that the juvenile court lacked jurisdiction because the matter was a "federal case." The court overruled the objection, relying on the language of Welfare and Institutions Code section 602 which states the juvenile court has jurisdiction of a person under age 18 "when he or she *614 violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime. (Italics added.)
At the trial, two of the persons who had been detained with Jose testified that they had made arrangements with undisclosed parties for assistance to cross into the United States and had agreed to pay $1,800 once safely inside the country. They testified that Jose acted as their guide during the crossing. Jose told them when to move and what to watch for, he swept their footprints to remove their tracks, and he repeatedly spoke on a cell phone attempting to determine whether there were any immigration agents in the vicinity.
Based on this evidence, the court found the allegations in the petition to be true beyond a reasonable doubt, and declared Jose a ward of the court. At the dispositional hearing, the court declared the offense a felony, set the maximum term of confinement at 10 years, placed Jose on formal probation, and gave him credit for 58 days already served in juvenile hall.

DISCUSSION
Jose contends the superior court lacked subject matter jurisdiction over the juvenile petition because the petition was based solely on his alleged violation of federal criminal law.
Welfare and Institutions Code section 602 provides that "any person who is under the age of 18 years when he or she violates any law of this state or of the United States or any ordinance ... is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court." (Italics added.) Jose acknowledges that by its terms, this statutory provision permits a California court to assume jurisdiction over a minor who violates a federal law, even if the federal law has no state law counterpart. Jose argues, however, that this statute is unconstitutional to the extent it permits a California court to adjudicate federal criminal law violations in a juvenile proceeding.
In analyzing this contention, we begin with the strong presumption that a state has concurrent jurisdiction over all cases brought under federal law. "[U]nder our federal system, the States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause. Under this system of dual sovereignty, ... state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." (Tafflin v. Levitt (1990) 493 U.S. 455, 458, 110 S.Ct. 792, 107 L.Ed.2d 887 (Tafflin).) "To give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest State courts of their presumptively concurrent jurisdiction." (Yellow Freight System, Inc. v. Donnelly (1990) 494 U.S. 820, 823, 110 S.Ct. 1566, 108 L.Ed.2d 834, italics added.) This concurrent jurisdiction presumption can be rebutted only by: (1) "`an explicit statutory directive'"; (2) "`unmistakable implication from legislative history'"; or (3) "`a clear incompatibility between state-court jurisdiction and federal interests.'" (Tafflin, supra, 493 U.S. at pp. 459-460, 110 S.Ct. 792.)
Jose contends the presumption of concurrent jurisdiction in this case is rebutted by an explicit statutory directive and by a clear incompatibility between state-court jurisdiction and federal interests. For the reasons explained below, we reject these contentions.

I. No Statutory Directive Divesting State Courts of Jurisdiction

The centerpiece of Jose's appellate argument challenging the court's subject matter *615 jurisdiction is based on 18 United States Code section 3231, which provides: "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."[1] It is well settled that section 3231 provides federal courts with exclusive jurisdiction over federal criminal law claims. (See Tennessee v. Davis (1879) 100 U.S. 257, 262, 25 L.Ed. 648; People v. Tilehkooh (2003) 113 Cal.App.4th 1433, 1445-1446, 7 Cal.Rptr.3d 226.)
Jose contends that because section 3231 expressly provides federal courts with exclusive jurisdiction and divests state courts of the power to adjudicate federal crimes, it necessarily precludes state courts from assuming jurisdiction of federal criminal law claims alleged in a juvenile delinquency proceeding. Jose emphasizes that although California labels juvenile delinquency proceedings as civil, the courts have widely recognized that juvenile delinquency proceedings are in reality, and for all practical purposes, criminal proceedings. (See In re Gault (1967) 387 U.S. 1, 21-24, 29-50, 87 S.Ct. 1428,18 L.Ed.2d 527 [juvenile delinquency matter is akin to a criminal prosecution and to insist otherwise is to adhere to "sentiment [or] folklore," "mere verbiage" and "cliche"]; In re Winship (1970) 397 U.S. 358, 365, 90 S.Ct. 1068, 25 L.Ed.2d 368; In re Kevin S. (2003) 113 Cal.App.4th 97, 109, 6 Cal. Rptr.3d 178; In re Gregory K (1980) 106 Cal.App.3d 164, 168 & 168-169, fn. 2, 165 Cal.Rptr. 35.)
The Attorney General counters that juvenile delinquency proceedings in California are statutorily designated to be civil in nature (Welf. & Inst.Code, § 203) and concern primarily the status of an individual (see In re Kasaundra D. (2004) 121 Cal. App.4th 533, 539-540, 16 Cal.Rptr.3d 920), and therefore fall outside of section 3231's exclusive federal jurisdiction rule for criminal cases. The Attorney General emphasizes the differences between a criminal and juvenile proceeding, including that juvenile proceedings do not result in the conviction of a crime. (See Welf. & Inst. Code, § 203; In re Dargo (1948) 86 Cal. App.2d 114, 117, 194 P.2d 34.) The Attorney General further points out that the courts have upheld state court jurisdiction over a civil claim even if the court is required to resolve as a predicate matter a legal issue normally subject to exclusive federal jurisdiction. (See Tafflin, supra, 493 U.S. at p. 464, 110 S.Ct. 792; Pan Am. Corp. v. Superior Court (1961) 366 U.S. 656, 664-665, 81 S.Ct. 1303, 6 L.Ed.2d 584; Lawrence v. Cohn (S.D.N.Y.1996) 932 F.Supp. 564, 581, fn. 16.)
Despite the interesting conceptual issues raised by the parties' arguments, we need not resolve whether a civil juvenile delinquency proceeding is in substance a criminal proceeding for purposes of state court subject matter jurisdiction. This is because the federal courts have specifically determined that the jurisdictional statute upon which the parties focus, section 3231, does not apply to a juvenile delinquency claim based on a federal law violation, and instead the governing jurisdictional rules are contained in the federal statutory scheme relating to the federal juvenile justice system. (§ 5001 et seq.; see In re Sealed Case (D.C.Cir.1997) 131 F.3d 208, 211; U.S. v. Chambers (6th Cir.1991) 944 F.2d 1253, 1258-1259 (Chambers).)
Before 1974, juvenile delinquency matters arising under federal law were subject *616 to unlimited federal court jurisdiction, but prosecuting agencies had the discretion to surrender jurisdiction of certain juvenile cases to the states. (Act of June 11, 1932, ch. 243, 47 Stat. 301.) In 1974, Congress made sweeping changes to the federal juvenile justice system in an act titled the Juvenile Justice and Delinquency Prevention Act (JJDPA) of 1974.[2] (Pub.L. No. 93-415, § 502 (September 7, 1974) 88 Stat. 1109,1134.) The JJDPA substantially limited federal jurisdiction over juvenile delinquency matters and created a "statutory framework for determining whether accused juveniles should face federal or state prosecution." (Mahini, There's No Place Like Home: The Availability of Judicial Review over Certification Decisions Invoking Federal Jurisdiction under the Juvenile Justice and Delinquency Prevention Act (2000) 53 Vand. L.Rev. 1311, 1317-1319, 1334; see Chambers, supra, 944 F.2d at p. 1260.) Although the statute has been amended several times, the fundamental statutory framework has remained unchanged. Under the current statute (codified in section 5032), federal prosecutors "shall not" proceed against any juvenile in a federal court unless the United States Attorney General certifies to the federal court that one of three factual circumstances exists in the case: "(1) the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, (2) the State does not have available programs and services adequate for the needs of juveniles, or (3) the offense charged is a crime of violence that is a felony or [a specified controlled substance offense], and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction." (§ 5032.) "If the Attorney General does not so certify, such juvenile shall be surrendered to the appropriate legal authorities of such State."[3] (Ibid.)
The federal courts and legal commentators recognize that the enactment of this certification procedure "reflects a legislative perception that accused juvenile offenders generally belong in the hands of state authorities, absent unusual circumstances and/or special procedural protections." (Chambers, supra, 944 F.2d at p. 1258; see United States v. Sechrist (7th Cir.1981) 640 F.2d 81, 84; U.S. v. Juvenile Male (9th Cir.1988) 864 F.2d 641, *617 644; Mahini, supra, 53 Vand. L.Rev. at pp. 1316-1317; Shepherd, Trying Juveniles in Federal Court (1994) 9 Crim. Just. 45, 45-46.) "In enacting section 5032's certification requirement, Congress concerned itself primarily with the proper allocation, between state and federal government, of the power to decide cases involving juveniles accused of acts generally made criminal by federal statutes." (Chambers, supra, at p. 1260.) "In short, Congress `recognized that the federal court system is at best ill equipped to meet the needs of juvenile offenders. Deference to the state courts should always be observed except in the most severe of cases.'" (Id. at p. 1258; see Mahini, supra, 53 Vand. L.Rev. at pp. 1334-1337; Shepherd, supra, 9 Crim. Just, at p. 47.)
Based on this legislative history, federal courts have concluded that the JJDPA replaced section 3231 as the applicable subject matter jurisdictional statute for purposes of juvenile delinquency claims. (See In re Sealed Case, supra, 131 F.3d at p. 211; Chambers, supra, 944 F.2d at pp. 1257-1259.) ` The Chambers court explained that in enacting the JJDPA, Congress "impliedly revoked the district courts' preexisting, largely unrestricted subject-matter jurisdiction over criminal prosecutions against juveniles ... by effectively establishing that the acts which federal statutes declared to be criminal are generally noncriminal when committed by juveniles.... [J]uveniles committing these acts merely enter into a state of `juvenile delinquency,' defined as a `violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult.' 18 U.S.C. § 5031 (emphasis added). If juveniles generally commit no `crimes' when performing these acts, the district court and government cannot rely upon the criminal statutes as a basis for the court's assumption of jurisdiction over the prosecution of juveniles. Rather the district court generally must surrender the accused juveniles to the appropriate state authorities. See 18 U.S.C. § 5032. [¶] Of course, the jurisdiction which Congress took away from the federal courts with one hand Congress partially restored with the other hand. Congress conferred jurisdiction upon the district courts to proceed, under the authority of section 5032, against juveniles committing acts that would be federal crimes if committed by adults, where the prosecution meets the statutorily prescribed certification requirements set forth above. Accordingly, the certification requirement is a prerequisite to the district court's subject-matter jurisdiction in cases where the government proceeds against juveniles accused of performing acts which would be federal crimes if committed by adults. In other words, Congress effectively eliminated the underage defendant's `crime,' and replaced it with `juvenile delinquency,' a state vesting jurisdiction in the federal courts under the terms of section 5032 or not at all." (Chambers, supra, 944 F.2d at pp. 1258-1259, fn. omitted.)
This analysis has been expressly or implicitly adopted by other federal circuits, which have agreed that the certification requirements are a jurisdictional prerequisite to proceeding against a juvenile offender in federal court. (See In re Sealed Case, supra, 131 F.3d at p. 211; U.S. v. T.M. (4th Cir.2005) 413 F.3d 420, 422-423 ["Proper certification under § 5032 by the government is necessary to create subject matter jurisdiction over a juvenile proceeding"]; U.S. v. Doe (9th Cir.2004) 366 F.3d 1069, 1072; U.S. v. Juvenile No. 1 (5th Cir.1997) 118 F.3d 298, 303.) If the certification requirements are a jurisdictional prerequisite for federal court jurisdiction over juvenile delinquency matters, *618 then section 3231, which provides federal jurisdiction over all criminal matters, no longer applies to juvenile proceedings.
We find the Chambers analysis persuasive and applicable to the issue before us. In enacting section 5032's certification requirements, Congress eliminated the prior rule of unlimited federal court subject matter jurisdiction over a "juvenile alleged to have committed an act of juvenile delinquency" (§ 5032), which Congress specifically defined as the violation of federal law by a juvenile that "would have been" a crime if committed by an adult (§ 5031). Congress then provided that the juvenile "shall be proceeded against" in federal court only if the Attorney General certifies one of three circumstances apply, and "[i]f the Attorney General does not so certify, such juvenile shall be surrendered to the appropriate legal authorities of such State." (§ 5032.) Under these explicit provisions, when a juvenile commits a violation of federal law, it is not considered a criminal offense and is not subject to exclusive jurisdiction in the federal courts. Thus, for jurisdiction purposes, the offense is not governed by section 3231.
Based on this analysis, we reject Jose's argument that section 3231 divests California courts of jurisdiction to adjudicate juvenile delinquency matters based solely on alleged violations of federal criminal law. Because Congress intended that claims alleging a juvenile committed a federal crime are not governed by section 3231's jurisdictional mandate, Jose cannot rely on section 3231 to successfully argue that Congress intended to retain exclusive federal jurisdiction over his juvenile action.
In seeking to avoid this result, Jose argues that section 5032 does not "grant" jurisdiction to a state court because the first certification requirement provides that a federal court may assume jurisdiction if "the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency." (§ 5032.) This argument reflects a misunderstanding of the nature of a state court's jurisdiction over cases brought under federal law. State courts have jurisdiction over federal claims not because the jurisdiction is "granted" or "conferred" upon them by Congress, but because there is a constitutional presumption of concurrent jurisdiction, unless Congress expresses a contrary intent. (Tafflin, supra, 493 U.S. at pp. 458-459, 110 S.Ct. 792.) "[B]ecause `[t]he laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are[,] ... [t]he two together form one system of jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are not foreign to each other....'" (Id. at pp. 469-470, 110 S.Ct. 792 (conc. opn. of Scalia, J.).)
To the extent Jose is arguing that section 5032's certification factor relating to the lack of jurisdiction in the state court expressly ousts a state court from jurisdiction over juvenile delinquency matters, the argument fails. To rebut the presumption of concurrent jurisdiction, the language must be "`explicit.'" (Tafflin, supra, 493 U.S. at p. 459, 110 S.Ct. 792.) By suggesting there are some situations when a state court would not have jurisdiction, Congress did not explicitly remove jurisdiction over juvenile delinquency claims based on a federal criminal law violation. There are many situations in which a state would not have jurisdiction over a federal juvenile delinquency case. For example, if the juvenile law in the state where the crime was committed did not provide for juvenile court jurisdiction over federal law claims or over the venue where the crime was *619 committed (e.g., a military facility or Indian reservation), the state would not have jurisdiction and therefore jurisdiction over those particular claims would remain exclusively within the federal court. (§ 5032; see, e.g., U.S. v. Juvenile Male (6th Cir. 1991) 939 F.2d 321, 323-324.) The fact that a state court will not always have jurisdiction over a particular juvenile matter does not suggest Congress's intent to provide exclusive federal jurisdiction over all juvenile delinquency claims based on federal law. Jose's alternate argument that an explicit removal can be inferred from section 3231's exclusive federal jurisdiction over criminal matters is without merit because, as we have explained above, section 3231 does not govern subject matter jurisdiction over juvenile delinquency claims.
We also reject Jose's argument that the reference in section 5032 certification requirements to the situation when a state juvenile court "does not have jurisdiction" implies that Congress intended federal courts to have exclusive jurisdiction over juvenile delinquency cases based solely on a federal law violation. (§ 5032.) To rebut by implication the presumption of concurrent jurisdiction, "the question is not whether any intent at all may be divined from legislative silence on the issue, but whether Congress ... may be said to have affirmatively or unmistakably intended jurisdiction to be exclusively federal." (Tafflin, supra, 493 U.S. at p. 462, 110 S.Ct. 792.) Jose does not cite to any relevant legislative history of section 5032 showing that Congress intended to divest the states of jurisdiction over juvenile delinquency matters based on federal law violations. The legislative history in fact supports the contrary conclusion. As the federal courts and commentators have pointed out, the central intent in enacting the certification procedure was to shift federal juvenile delinquency cases from the federal courts to the state courts. (See Chambers, supra, 944 F.2d at p. 1258; Mahini, supra, 53 Vand. L.Rev. at pp. 1316-1317.)
In support of his interpretation of sections 3231 and 5032, Jose cites two out-of-state cases, State v. Tidwell (1982) 32 Wash.App. 971, 651 P.2d 228 and In re Welfare of J.J.T. (Minn.Ct.App.1997) 559 N.W.2d 714. However, these courts relied on section 3231 to hold that a state could not assume jurisdiction over a juvenile delinquency petition based solely on an alleged violation of federal law. (Tidwell, supra, at p. 231; In re Welfare of J.J.T, supra, at pp. 716-717.) Because we conclude section 3231 is inapplicable to a juvenile delinquency claim, we find these decisions to be unhelpful.
Finally, we reject Jose's argument that our reading of section 5032 in this case implicates "grave federalism concerns." Jose contends that if a state court assumes jurisdiction without the case first going through the section 5032 certification process, "it would usurp the role given to both the Executive and Judicial branches of the federal government" because it would not allow the federal prosecutor and the district court to first determine the issue whether the juvenile should be in federal court. However, as we have discussed, the fundamental premise underlying section 5032's certification provisions is that the federal court is generally not the appropriate forum to bring charges against a juvenile who committed a federal crime. The certification requirements are necessary only if the federal government seeks to assume jurisdiction. No such express determinations need be made under the statute if a delinquency matter is transferred to state court.
Moreover, there is a specific statutory procedure under which the federal government may seek to certify the case and *620 assume jurisdiction in the federal courts. Under section 5(101, when a federal law enforcement officer arrests an individual for a federal crime, federal prosecutors have the obligation to investigate to determine whether to seek certification under section 5032 or to surrender that individual to local juvenile authorities for prosecution in state court.[4] Although the record in this case is unclear whether these precise procedures were followed in transferring Jose from the custody of federal border agents to the custody of state officials, there is no basis in the record for concluding that the district attorney's charges against Jose were in contravention of the wishes of the federal prosecuting agency. To the contrary, because Jose was arrested by federal law enforcement officials, there presumably was a deliberate election by the federal agency to cede jurisdiction to the state. In this regard, it is relevant to note that the prosecutor at the juvenile trial was a federal prosecutor who had been deputized as a deputy district attorney for purposes of prosecuting this case in state juvenile court.

II. No Clear Incompatibility Between State Court Jurisdiction and Federal Interests

Even where there is no federal statute that removes state court jurisdiction over a federal law violation, a court may conclude jurisdiction is preempted if there is a "`clear incompatibility between state-court jurisdiction and federal interests.'" (Tafflin, supra, 493 U.S. at pp. 459-460, 110 S.Ct. 792.) Jose asserts a number of grounds to support his argument that state court jurisdiction is incompatible with federal interests in this case. We find these grounds to be without merit.
Jose first contends, without citation to authority, that "procedural difficulties" would result because the state court must follow federal evidentiary and procedural rules, including Ninth Circuit appellate procedures. The argument fails because there is no requirement that a state court apply federal procedural rules merely because it has subject matter jurisdiction over a federal claim. Moreover, as the United States Supreme Court has recognized, the fact that federal law provides special procedural mechanisms for the enforcement of a federal law does not generally "create a `clear incompatibility' with federal interests" to show Congress intended exclusive federal jurisdiction. (Tafflin, supra, 493 U.S. at pp. 466-467, 110 S.Ct. 792; see also Dowd Box Co. v. Courtney (1962) 368 U.S. 502, 507-509, 82 S.Ct. 519, 7 L.Ed.2d 483 [finding concurrent jurisdiction over certain Labor Management Relations Act suits, despite applicable federal enforcement and venue provisions]; Maine v. Thiboutot (1980) 448 U.S. 1, 3, fn. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555.)
We are also unpersuaded by Jose's arguments that state court jurisdiction over federal juvenile delinquency claims conflicts *621 with federal interests because state courts are unfamiliar with federal criminal law and therefore concurrent jurisdiction would increase the risk of judicial error. There is no principled basis to support this argument. In this case, the fact that violations of the anti-smuggling law do not routinely come before state court judges did not affect the fairness or accuracy of the court's decision making. The issues in this case were straightforward and primarily factual. It was undisputed that Jose was among a group of individuals who were attempting to cross the border without documentation. The issue for the court's resolution was whether Jose was the leader of the group who was guiding the other immigrants or whether he was one of the immigrants who were being brought into the country by another individual. There was nothing in the nature of this case that required the expertise of a judicial officer who had routinely decided alien smuggling cases. Moreover, federal courts, pursuant to section 3231, would retain full authority and responsibility for the interpretation and application of federal criminal law applicable to alien smuggling, and state courts adjudicating juvenile delinquency claims based on alleged violations of federal law would be guided by these interpretations.
We also reject Jose's argument that jurisdiction over federal juvenile delinquency cases is improper because it will burden limited resources of the states and counties. Welfare and Institutions Code section 602 expressly provides for juvenile court jurisdiction over juveniles who commit crimes that violate only federal law. If the Legislature believes jurisdiction over federal crimes is not a beneficial use of state resources, it is within its authority to amend the statute to limit the state's authority in this regard. Moreover, if the state or locality believes there is an unnecessary burden on its resources to assume jurisdiction over a particular case based solely on a federal law violation, it may decline to accept jurisdiction, and the federal prosecutor would thus satisfy the first element of certification.
Further, we find unavailing Jose's focus on the fact that immigration and alienage are the exclusive province of the federal government, and therefore that states may not regulate or criminalize matters related to immigration or alienage. (See Truax v. Raich (1915) 239 U.S. 33, 42, 36 S.Ct. 7, 60 L.Ed. 131.) By upholding state court jurisdiction over a juvenile's alleged immigration-related violation, the state does not regulate or criminalize immigration matters. Rather, it is merely providing a forum for adjudicating violations of federal law by a juvenile. The state has a strong interest in ensuring that minors who violate lawswhether the laws are local, state, or federalobtain the protective and rehabilitative objectives of the state juvenile justice system.

Conclusion
We conclude that Jose has failed to rebut the presumption of concurrent jurisdiction over juvenile proceedings based on a violation of federal law. Section 3231, relied upon Jose, does not apply to juvenile delinquency claims. Jose has not cited, nor have we found, any other federal statute that removes concurrent state jurisdiction over a juvenile delinquency proceeding based on a violation of federal law, including immigration law.

DISPOSITION
Judgment affirmed.
WE CONCUR: O'ROURKE and AARON, JJ.
NOTES
[1] All further statutory references are to title 18 of the United States Code, unless otherwise specified.
[2] The courts sometimes refer to this legislation by its original title, Federal Juvenile Delinquency Act (FJDA). (See Chambers, supra, 944 F.2d at pp. 1257-1258.)
[3] Section 5032 states in relevant part: "A juvenile alleged to have committed an act of juvenile delinquency, other than a violation of law committed within the special maritime and territorial jurisdiction of the United States for which the maximum authorized term of imprisonment does not exceed six months, shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to the appropriate district court of the United States that (1) the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, (2) the State does not have available programs and services adequate for the needs of juveniles, or (3) the offense charged is a crime of violence that is a felony or [a specified controlled substance offense], and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction. [¶] If the Attorney General does not so certify, such juvenile shall be surrendered to the appropriate legal authorities of such State. The first two certification factors were part of the 1974 legislation and the third certification factor was added in 1984. (Pub.L. No. 98-473 (Oct. 12, 1984) 98 Stat. 2149-2150.) The remaining portion of section 5032 sets forth detailed rules governing when a juvenile who falls within one of these three categories may be treated as an adult. (§ 5032.)
[4] Section 5001 provides: "Whenever any person under twenty-one years of age has been arrested, charged with the commission of an offense punishable in any court of the United States or of the District of Columbia, and, after investigation by the Department of Justice, it appears that such person has committed an offense or is a delinquent under the laws of any State or of the District of Columbia which can and will assume jurisdiction over such juvenile and will take him into custody and deal with him according to the laws of such State or of the District of Columbia, and that it will be to the best interest of the United States and of the juvenile offender, the United States attorney of the district in which such person has been arrested may forego his prosecution and surrender him as herein provided, unless such surrender is precluded under section 5032 of this title." (Italics added.)