

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

IN RE: THE MATTER OF: D.H.C.,   )
                                      )

       Appellant,         )
                                      )

v.                      )        **WD85324**
                                      )

JUVENILE OFFICER,       )        **Filed: September 5, 2023**
                                      )

       Respondent.      )

### Appeal from the Circuit Court of Buchanan County
### The Honorable Patrick K. Robb, Judge

### Before Division Three: Alok Ahuja, P.J., and
### Karen King Mitchell and Edward R. Ardini, Jr., JJ.

In December 2020, the Circuit Court of Buchanan County assumed jurisdiction over D.C., a juvenile, based on its determination that he had committed a federal firearms offense. The court placed D.C. on supervised probation. In March 2022, the court granted the Juvenile Officer's motion to modify its prior dispositional order, based on D.C.'s commission of additional state-law offenses, and his violation of certain probation conditions. The court ordered that D.C. be placed in the custody of the Division of Youth Services.

D.C. appeals. We conclude that the circuit court lacked subject-matter jurisdiction to adjudicate D.C. delinquent in 2020, and thereafter place and maintain him on probation, based on his violation of federal law. We accordingly

reverse the circuit court's 2022 dispositional order, which is based in part on D.C.'s commission of the federal offense, and his violation of probation conditions imposed as a result of that offense. We remand to the circuit court for it to conduct a new dispositional hearing, based solely on D.C.'s commission of the state-law offenses alleged in the Juvenile Officer's modification motion.

**Factual Background**

On December 3, 2020, the Buchanan County Juvenile Officer filed a petition in the juvenile division of the circuit court. The petition alleged that D.C., a male who was then sixteen years of age, was in need of care and treatment because

> [D.C.], in violation of 18 U.S.C. § 922(x)(2), committed the offense of unlawful possession of a handgun by a minor, in that on or about November 21, 2020, in the County of Buchanan, State of Missouri, [D.C.] was under 18 years of age and knowingly possessed a black Smith and Wesson SD9 VE pistol, a handgun.

At a hearing on December 22, 2020, D.C. waived his right to counsel and admitted the allegations in the petition to be true. The circuit court found beyond a reasonable doubt that the allegations in the petition were true, and assumed jurisdiction over D.C. pursuant to § 211.031.1(3).[1] The court ordered that D.C. be placed on probation supervised by the Juvenile Office, in the legal and physical custody of his mother.

The Juvenile Officer filed a motion to modify the previous dispositional order on February 25, 2022. The motion to modify alleged four new counts against D.C. Count I alleged that D.C. had committed the class D felony of

---

[1] Unless otherwise indicated, statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated through the 2022 Cumulative Supplement.

2

stealing, in violation of § 570.030, by taking property worth at least $750.00 from a Walmart store. Count II alleged that D.C. engaged in behavior injurious to his welfare, in violation of § 211.031.1(2)(d), by consuming methamphetamine and marijuana, as indicated by a drug test on February 24, 2022. The final two counts charged that D.C. had violated the conditions of his probation by failing to attend and make progress at school (Count III), and by failing to pay court costs, meet with his probation officer, and submit to a substance abuse assessment (Count IV).

The circuit court held a hearing on the motion to modify on March 15, 2022, at which D.C. was represented by counsel. At the hearing, the Juvenile Officer presented testimony from an asset protection associate from Walmart; the principal of D.C.'s school; a clinical supervisor at the healthcare facility where D.C. was supposed to undergo a substance abuse assessment; a Deputy Juvenile Officer who had administered a drug test on D.C.; and the probation officer who supervised D.C.'s probation. D.C. presented no evidence.

Following the hearing the court found that the Juvenile Officer had proven all four counts. After a dispositional hearing on March 28, 2022, the court ordered D.C. to be committed to the physical and legal custody of the Division of Youth Services.

D.C. appeals.

### Standard of Review

This Court reviews juvenile proceedings under the same standards as other court-tried civil cases. *B.O. v. Juvenile Office*, 595 S.W.3d 506, 509 (Mo. App. W.D. 2020). Therefore, "[w]e will affirm the juvenile court's judgment 'unless it

3

is not supported by evidence, is against the weight of the evidence, or erroneously declares or applies the law.'" *J.R.K. v. Juvenile Officer*, 667 S.W.3d 164, 167 (Mo. App. W.D. 2023) (quoting *D.C.M. v. Pemiscot Cnty. Juvenile Office*, 578 S.W.3d 776, 786 (Mo. 2019)). We review questions of law, including statutory interpretation issues, *de novo*. *Int. of J.T.J.*, 635 S.W.3d 566, 569 (Mo. 2021).

## Discussion

D.C. raises two Points on appeal. He argues that the circuit court erred in overruling his motion for judgment of acquittal because the court lacked both statutory authority and subject matter jurisdiction to hear the Juvenile Officer's motion to modify. D.C. argues that the circuit court had no jurisdiction or authority to place and maintain him on probation based on a violation of *federal* law. In response, the Juvenile Officer does not defend the circuit court's original assumption of jurisdiction over D.C., or D.C.'s original placement on probation. Instead, the Juvenile Officer asks that we find that the circuit court could nevertheless assert jurisdiction over D.C. based on the first two counts contained in the 2022 motion to modify, each of which alleged a violation of state law.

## I.

D.C.'s arguments challenge the circuit court's power to initially adjudicate him delinquent in 2020 for commission of a federal firearms offense, and to subsequently place him on probation based on that adjudication. D.C. *could have* appealed the circuit court's initial adjudication and dispositional orders in 2020. Arguably, his present arguments constitute a collateral attack on the 2020 judgment.

4

Although collateral attacks on earlier judgments are generally prohibited in the interest of finality, "a judgment may be subject to collateral attack if it is void because it was rendered by a court lacking jurisdiction over the parties or the subject matter." *Rischer v. Helzer*, 473 S.W.3d 188, 193 (Mo. App. W.D. 2015) (citations omitted). "[A] void judgment 'is entitled to no respect, and may be impeached at any time in any proceeding in which it is sought to be enforced or in which its validity is questioned by anyone with whose rights or interests it conflicts.'" *Taylor v. Taylor*, 47 S.W.3d 377, 384 (Mo. App. W.D. 2001) (quoting *La Presto v. La Presto*, 285 S.W.2d 568, 570 (Mo. 1955)); *see also*, *e.g.*, *Int. of A.R.B.*, 586 S.W.3d 846, 860 (Mo. App. W.D. 2019).

The circuit court lacked subject matter jurisdiction to adjudicate D.C. delinquent based on his violation of federal criminal law, and D.C. was therefore entitled to challenge the 2020 adjudication in the 2022 modification proceeding and in this appeal. Missouri courts have broad subject matter jurisdiction: under Article V, § 14 of the Missouri Constitution, their jurisdiction extends "over all cases and matters, civil and criminal." *See J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 253-254 (Mo. 2009). Despite the breadth of the jurisdiction conferred on circuit courts by the Missouri Constitution, however, "no state may give its courts subject matter jurisdiction over 'matters that federal law places under the "exclusive" jurisdiction of the federal courts.'" *State v. Smith*, 522 S.W.3d 221, 232 (Mo. 2017) (quoting *State ex rel. Laughlin v. Bowersox*, 318 S.W.3d 695, 698 (Mo. 2010)).

Federal courts generally have exclusive original jurisdiction over federal crimes. 18 U.S.C. § 3231 provides:

The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof.

Appellate courts in Minnesota and Washington have concluded that 18 U.S.C. § 3231 preempts state court jurisdiction to determine whether an individual has violated federal law in a juvenile proceeding. *See Matter of Welfare of J.J.T.*, 559 N.W.2d 714, 715-16 (Minn. App. 1997); *State v. Tidwell*, 651 P.2d 228, 229-31 (Wash. App. 1982).

On the other hand, the California Supreme Court held in *In re Jose C.*, 198 P.3d 1087 (Cal. 2009), that California state courts *could* exercise subject matter jurisdiction over juveniles alleged to have violated federal law, where a California statute expressly provided that juveniles who "violate[d] any law . . . of the United States" could be made wards of the court. *Id.* at 1092 (quoting Cal. Welfare & Institutions Code § 602(a)). The Court reasoned that the California statute

> incorporates by reference federal criminal law, rendering it a basis for the imposition of independent state sanctions, and grants state courts authority to adjudicate such matters. It recognizes the independent state interest in rehabilitating juveniles within this state who are unable to conform their conduct to the requirements of the law – whether that law be local ordinance, state statute, or federal enactment. Section 3231 does not deprive state courts of jurisdiction granted under their own state laws to impose independent state sanctions.

*Id.* at 1095 (footnote omitted). The California Supreme Court distinguished the decisions in *Tidwell* and *J.J.T.* on the basis that, in those cases, the courts had "fail[ed] to consider whether the [State] Legislature had made, or could make,

offenses against federal sovereignty into matters of independent state concern by incorporating federal law into its state juvenile delinquency scheme." *Id.* at 1096.

Under these decisions, we conclude that Missouri state courts lack subject matter jurisdiction to adjudicate juveniles as delinquent based on their violation of federal criminal laws. By adjudicating D.C. to be delinquent for committing a federal offense, the circuit court necessarily exercised jurisdiction over an "offense[ ] against the laws of the United States." Under § 211.031.1(3), the circuit court only has jurisdiction "over claims that juveniles have violated the criminal law"; under the statute a juvenile can "only be found to be delinquent if he ha[s] himself *actually violated*" the law. *P.L.S. v. Juvenile Officer*, 651 S.W.3d 885, 889, 891 (Mo. App. W.D. 2022). Thus, to find D.C. delinquent based on 18 U.S.C. § 922(x)(2), the circuit court was required to find that he had actually violated the federal statute.

Moreover, unlike in California, Missouri's juvenile statutes do not give circuit courts authority to find juveniles to be delinquent based on their violation of federal law. Instead, § 211.031.1(3) authorizes the circuit court to exercise jurisdiction in proceedings "[i]nvolving any child who is alleged to have violated *a state law or municipal ordinance*." (Emphasis added.) "The authority of the juvenile courts under Chapter 211 is limited to the circumstances described in § 211.031." *P.L.S.*, 651 S.W.3d at 889. "While the juvenile code is to be liberally construed to promote the interests of infants, such liberal construction cannot be utilized to give the juvenile court jurisdiction and powers not conferred upon it by statute." *State ex rel. Choctaw Nation of Okla. v. Sifferman*, 633 S.W.3d 876, 880-881 (Mo. App. S.D. 2021) (quoting *Int. of B.L.W.*, 823 S.W.2d 119, 121-122

7

(Mo. App. S.D. 1992) (other citations omitted)).  Missouri statutes do not authorize the State's courts to exercise jurisdiction over juveniles who violate federal law, and thus do not incorporate federal criminal laws into Missouri law. For that reason, Missouri courts cannot rely on the second sentence of 18 U.S.C. § 3231, which preserves "the jurisdiction of the courts of the several States *under the laws thereof*."  (Emphasis added.)

We accordingly conclude that the circuit court lacked subject matter jurisdiction to adjudicate D.C. to be delinquent in 2020 based on his violation of 18 U.S.C. § 922(x)(2).

## II.

Our conclusion that the circuit court lacked subject-matter jurisdiction to assume jurisdiction over D.C. in 2020 does not end the matter, however.  The Juvenile Officer argues that, whatever the legality of the circuit court's 2020 adjudication, the juvenile court nevertheless had statutory authority to decide the allegations in the motion to modify that D.C. had violated *state law* by committing the class D felony of stealing (in violation of § 570.030), and the status offense of engaging in behavior injurious to himself by consuming controlled substances (in violation of § 211.031.1(2)(d)).  We agree.

In Missouri, motions to modify may be used to adjudicate new allegations against a juvenile, rather than merely to modify the disposition based on the original adjudication.  *See C.L.B. v. Juvenile Officer*, 22 S.W.3d 233 (Mo. App. W.D. 2000).  Where a motion to modify is used to adjudicate new allegations, the court must employ a level of procedural formality akin to that used in adjudicating an original petition.  For example, in *C.L.B.*, we held that, where

8

motions to modify are used to adjudicate "the juvenile's guilt of additional crimes occurring while the juvenile was under the court's jurisdiction[,]" the court must find that the juvenile committed the offense using the beyond-a-reasonable-doubt evidentiary standard, not the lower clear-and-convincing standard applicable to probation violations. *Id.* at 239. We subsequently held in *B.O. v. Juvenile Office*, 595 S.W.3d 506 (Mo. App. W.D. 2020), that, where a motion to modify brings new claims, the court must not only employ the reasonable-doubt standard, but must also hold a separate dispositional hearing in compliance with Rules 128.02 and 128.03 after adjudicating the motion to modify. *Id.* at 512-513.

Consistent with our decisions in *C.L.B.* and *B.O.*, Supreme Court Rule 128.02 specifies similar procedures for adjudication of delinquency claims, whether those claims are raised in an original petition or in a motion to modify. The Rule specifies:

> **b.** At such an adjudication hearing, the court shall determine what allegations in the petition or motion to modify are admitted by the juvenile and receive evidence on the allegations that have not been admitted. The hearing shall be held on the record. The court may take judicial notice of the court's file. The rules of evidence shall apply. All parties shall be afforded the opportunity to testify, present evidence, cross-examine witnesses, and present arguments of law and fact and arguments concerning the weight, credibility and effect of the evidence.
>
> . . . .
>
> **e.** Upon finding that any allegation in the petition or motion to modify is proved within the applicable standard of proof, the court shall:
>
> > (1) make findings on the allegations in the petition or motion to modify that are proved; and

9

(2) enter an order whether the court has jurisdiction over the juvenile.

The circuit court held a full hearing on the record to adjudicate the allegations in the motion to modify, as required by the relevant caselaw and Rule. D.C. appeared at the hearing with his mother, and represented by counsel. Both parties were able to introduce evidence, and the court made specific findings on the allegations it found had been proven. The court specifically found "the allegations contained in Count I of the Motion to Modify [(the stealing offense)] to have been proven beyond a reasonable doubt." Although the court did not specifically state the evidentiary standard it applied to the status offense, the Juvenile Officer asked that the court find the offense to have occurred by clear and convincing evidence, the appropriate standard. *See In re A.G.R.*, 359 S.W.3d 103, 111 (Mo. App. W.D. 2011). After making its adjudicatory findings, the court held a separate dispositional hearing.

Thus, the procedures employed to adjudicate whether D.C. had committed the stealing offense and the status offense were substantially similar to the procedures which would have been employed if those allegations had been pursued in an independent delinquency petition. Moreover, D.C. does not challenge the sufficiency of the evidence presented by the Juvenile Officer to prove either offense; nor does he argue that the adjudication of those offenses was tainted by any other substantive or procedural infirmity. Therefore, although these allegations should have been adjudicated in an independent proceeding (rather than in a motion to modify an earlier disposition which the circuit court lacked jurisdiction to enter), it does not appear that D.C. was prejudiced by that distinction.

10

Although we conclude that it is unnecessary to vacate the circuit court's adjudications of the stealing offense and the controlled-substance-related status offense, we cannot affirm the circuit court's disposition order. The dispositional order was based not only on the adjudication of the two state-law offenses alleged in the motion to modify, but also on the court's 2020 determination that D.C. had committed a federal firearms offense, and its conclusion that D.C. had violated the conditions of his probation in multiple respects. In these circumstances, where the circuit court's dispositional order was based both on determinations it *had* jurisdiction to make, and determinations which were *outside* its jurisdiction, "'we cannot be sure that it was not [the juvenile court's determination that D.C. violated federal law, and the conditions of his probation for that offense] that tipped the scales' in the circuit court's choice of an appropriate disposition." *P.L.S.*, 651 S.W.3d at 892 (quoting *Int. of J.R.K.*, 643 S.W.3d 141, 146 (Mo. App. W.D. 2022)). Accordingly, we vacate the circuit court's dispositional order, and remand for the court to consider D.C.'s appropriate disposition anew, based solely on the two state-law violations the court previously found to have been proven.

## Conclusion

The circuit court's adjudications that D.C. committed the offense of stealing, and the status offense of behavior injurious to his welfare, are affirmed. The court's determination that D.C. had violated conditions of probation, and the court's dispositional order, are reversed. The case is remanded to the circuit court for further proceedings concerning an appropriate disposition.

11

_____
Alok Ahuja, Judge

All concur.